In re MARRIAGE OF LARRY A. FAIRCHILD, Petitioner and Cross-Respondent-Appellee, and LINDA L. FAIRCHILD, Respondent and Cross-Petitioner-Appellant.

Third District   No. 82—19

Opinion filed November 8, 1982.

Watts C. Johnson, of Johnson, Martin & Russell, of Princeton, for appellant.

Matthew A. Maloney, of Pierson & Maloney, of Princeton, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

On November 24, 1981, the circuit court of Bureau County entered a judgment order dissolving the 18-year marriage of Larry A. Fairchild and Linda L. Fairchild. Mrs. Fairchild appeals from that order alleging that the lower court erred in dividing the marital property of the parties, in setting the amount of maintenance and child support, and in awarding attorney fees. In addition, by motion of the appellant, agreed to in oral argument by the appellee, we have been asked to correct certain mathematical errors appearing on the face of the judgment order. We consider the relief requested in the motion along with the issues raised by the notice of appeal.

Three children were born of the Fairchild marriage, Kelly, born September 30, 1963, and now of age, Allen, born December 22, 1965, and Jody, born July 10, 1967. The parties acquired certain nonmarital property during their marriage, consisting primarily of the marital residence in Princeton, Illinois, two automobiles, and pension/savings benefits arising by reason of the appellee's employment. That employment is with Jones & Laughlin Steel Co., where appellee earns

$39,852 annually. The appellant, also employed, earns $350 biweekly, or $9,100 annually.

In its judgment order, the circuit court added the cash value of the parties' marital assets, including the equity in the marital home, the vested value of the appellee's pension/savings employment benefits and the two automobiles. It then awarded to the appellee the pension/savings benefits and an automobile, and to the appellant the marital residence and an automobile. To equalize this division, the lower court entered a money judgment bearing interest at the statutory rate in favor of the appellee against the appellant in the sum of $25,930, providing, however, that the appellee was enjoined from enforcing the judgment until July 10, 1985. It is apparent that the circuit court intended to provide the appellant and the minor children placed by its order in her custody the use of the marital residence until the younger child reached the age of majority. Then, presumably, the residence would be sold to satisfy the judgment and complete the division of property. Further, the judgment order required the appellee to pay $530 monthly to the appellant as unallocated maintenance and child support as well as $750 to the appellant for attorney fees, the latter amount being less than half of the fees actually incurred.

■ In her brief, the appellant urges that the circuit court's division of the marital property was flawed for three reasons. First, it is suggested that the lower court failed to include as marital property certain health and life insurance benefits enjoyed by the appellant by reason of her husband's employment. Mr. Donald Rickard, an economist, testified that the value of these benefits as of the date of dissolution was $43,614. We find no authority, nor has appellant cited any authority, for treating employee benefits of this type as "property" within the meaning of that term as used in section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503). There is authority for labeling as "property" the contractual right to future payments by reason of past employment. (*In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.) As we understand the health and life insurance benefits here in issue, they are a right to current payments by reason of current employment. Therefore, we conclude, as did the trial court, that these benefits are not "property" within the contemplation of section 503 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 503).

The appellant also contends that the division of marital property ordered below was flawed by reason of the trial court's use of the

"vested value" of the pension/savings benefits rather than the "accrued value." The difference in these values was recently explained in a respected journal.

"Most retirement plans will express the participant's interest in two different ways, accrued and vested. The employee's accrued interest is the amount that he has earned and will receive if he works for a sufficient period of time to satisfy the vesting requirements. His vested benefit is that portion of his accrued benefit which is nonforfeitable, and is usually determined according to the number of his years of employment. When an employee terminates employment, he is entitled to receive only his vested benefit." Dickinson, *Role of Retirement Plans, Real Property*, 10 Probate & Trust J. 644.

In the instant case, Mr. Rickard established the accrued value of the pension/savings benefits as $24,642, while the vested value was only $6,069.

Illinois courts have held that in valuing employment benefits of this nature, the benefits that have accrued should be considered marital property, regardless of whether the benefit is vested or nonvested. (*In re Marriage of Hunt; In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337.) The rationale for this position recognizes that

"[o]ne of the most valuable assets possessed by the average married couple may be the husband's right to retirement pay or pension benefits, often times earned while the wife has remained as a homemaker, mother and career-builder for her husband." Buser, *Division of Pension Benefits in Dissolution of Marriage Proceedings Under Illinois Marital Property Law*, 2 Ill. Trial Lawyers J. no. 3, at 21.

Indeed, one writer has suggested that these benefits may be a couple's "only significant asset." Dickinson, *Role of Retirement Plans*.

"The important expectations attached to this asset by both husband and wife cannot be overstated. They involve, after all, the fundamental belief by both spouses that their mutual security in later years will be protected by pension benefits. They also involve an assumption of interdependence and wealth sharing that has almost certainly been held jointly by both husband and wife during their years of marriage. As between the two spouses, it would seem unfair to deny to one of them the security and the sharing that both assumed would occur, at least where there are available adequate and fair judicial tools for measuring, valuing and allocating the interests involved."

Bonavich, *Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings*, 29 DePaul L. Rev. 1, 16 (1979).

Yet, it is precisely the problem of measuring and valuing which recently received attention by our supreme court.

Writing for a unanimous court, Justice Ward observed:

"Where one spouse has acquired a right to potential future benefits through his employment there is no way in which the other spouse may be awarded some defined interest in those benefits as marital property without a determination of the value they have to the employed spouse. A profit-sharing or retirement plan is a complex entity in which many factors must be taken into account in order to ascertain the monetary impact of the plan upon a given employee. [Citation.] Without evidence of the value of the benefits here in question the circuit court could not award an interest in them to the other spouse as a just apportionment of marital property." (*In re Marriage of Evans* (1981), 85 Ill. 2d 523, 529, 426 N.E.2d 854, 857.)

In the case *sub judice*, unlike the situation in *Evans*, the circuit court was provided with precise measures of valuation by Mr. Rickard. Nevertheless, the values offered by Mr. Rickard, based on standard actuarial assumptions, are only as valid as those assumptions. It has been suggested that

"[t]his method of valuation is suspect *** because it fails to take into account *** [the] possibility of forfeiture of the retirement fund by death, discharge, illness or termination by the employee spouse." Buser, *Division of Pension Benefits in Dissolution of Marriage Proceedings Under Illinois Marital Property Law*, 2 Ill. Trial Lawyers J. no. 3.

Another respected writer has observed that

"a great portion of the actuary's approach will be based on total 'speculation'—'guesswork' not fact due to his need to rely on statistics which are all based on an average hypothetical person of a certain age." (Goldberg, *Retirement Plans—Part III*, 128 Chi. Daily Law Bull. no. 96, at 14 (May 17, 1982).)

A potentially unfair situation thus arises, as the employee spouse risks making a final division of property with the non-employee spouse based upon a fixed value of future pension/savings benefits which may, in fact, be valueless if the actuarial assumptions for the hypothetical person are inapplicable to the very real person before the court.

"This risk would be created if the court awarded the nonem-

ployee spouse [marital] assets equal to one-half the value of the actuarial value of the expected retirement benefits. A present award to the nonemployee spouse of [marital] assets equal to one-half the actuarial value of the expected retirement benefits ignores the possibility that the employee spouse may never satisfy the conditions precedent to retirement. While the nonemployee spouse enjoys the equivalent of these benefits from the time of dissolution, the employee spouse must wait until his retirement, a fact which might not occur, to realize his share of the property division." (Gudebski and Jovovich, *Retirement Pay: A Divorce in Time Saved Mine*, 24 Hastings L.J. 347, 356 n.41 (1973).)

The circuit court in the instant case, while rejecting the actuarial valuations of the nonvested benefits, was obviously cognizant of the potential unfairness of these valuations should Mr. Rickard's assumptions prove incorrect.

The dilemma, then, is that while it is unfair to ignore the value of nonvested benefits in the division of marital property, those benefits in some instances being the only significant marital asset, it is also unfair to effect a present division of the marital property utilizing an actuarial value of those benefits computed in reliance on speculative, albeit actuarily accepted assumptions. Numerous authorities have suggested a solution to this dilemma.

"[R]eserving jurisdiction over the future benefits and effecting a subsequent division of the actual monetary benefits had the dual advantage of allocating equally between the parties the risk that the rights may never vest and enabling the court to better determine the actual proportion of future benefits that accrued to each party during the marriage." (Keating, *Recent Decision*, 70 Ill. B. J. 582, 585 (1982).)

In accord, it has been observed:

"Divorce courts are accustomed to retaining jurisdiction over their decrees and exercising a high degree of supervisory power over the immediate parties and even over third parties. It is not uncommon for a decree to require the performance of specific acts over a long period of time, e.g., a court might require that a wife retain possession of the marital home for the children's minority, and that the home then be sold, with a specified division of the proceeds. The argument that nonvested or nonmature plan benefits should not be considered property because they are incapable of immediate enjoyment, or incapable of precise valuation at a particular time, or uncertain as to

availability fails given this typical divorce procedure. There is no reason to suppose that divorce courts cannot, in particular cases, cope with those problems through an exercise of their continuing jurisdiction." (Bonavich, *Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings*, 29 DePaul L. Rev. 1, 15 (1979).)

The concept of reserving jurisdiction has been suggested as a solution to this dilemma not only by legal scholars, but by Illinois reviewing courts as well. (*In re Marriage of Hunt.*) A similar but conceptually distinguishable approach would classify nonvested pension benefits and other nonvested employee benefits as future income to the recipient, income which would be relevant in considering whether to award or modify maintenance to the nonemployee spouse. (*In re Marriage of Evans* (1980), 85 Ill. App. 3d 260, 406 N.E.2d 916 (Barry, J., dissenting).) As maintenance is subject to the continuing jurisdiction of the court (Ill. Rev. Stat. 1981, ch. 40, par. 510(a)), this approach offers the same flexibility in allowing the court to apportion to the nonemployee spouse an interest in pension benefits accrued during the marriage, yet at a time *in futuro* when the value of those benefits is no longer speculative. We believe it is preferable to classify accrued pension benefits as "property" rather than as "income." Pension benefits are shared wealth which the parties to a marriage consider to be their mutual security. (Bonavich, *Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings*, 29 DePaul L. Rev. 1 (1979).) Each party is entitled to a just proportion of their shared retirement wealth. And, while "[t]he court is permitted to enter a maintenance order only if it finds that the spouse satisfies certain need-oriented criteria" (Bonavich, *Allocation of Private Pension Benefits as Property in Illinois Divorce Proceedings*, 29 DePaul L. Rev. 1, 5 (1979)), the division of marital property is to be in "just proportions." Ill. Rev. Stat. 1981, ch. 40, par. 503(c).

■ We believe that under the facts of the case at bar, it is particularly appropriate to adopt the reserved jurisdiction approach, in that it equitably considers the interests of both parties, and assures that neither party will suffer an unfair or unjust result from the division of marital property. Accordingly, we are remanding this cause to the circuit court with directions to find that the appellee's pension/savings benefits are marital property, that the appellant has an apportionable ownership interest in those benefits and that the nature and extent of that apportionable interest is a matter reserved for subsequent judgment by that court and subject to its continuing jurisdiction.

■ As a third objection to the circuit court's division of marital

property, the appellant urges that it was error to award the appellee a money judgment bearing interest at the statutory rate as a means of equalizing the division. While our remand to the circuit court regarding other matters of marital property, to-wit, the pension/savings benefits, must also necessitate a reconsideration by the circuit court of the amount of this judgment intended to equalize the division of all property, we deem it appropriate also to consider the award of judgment interest payable to the appellee by the appellant during the children's minority. We find no basis in statute or case law for such an award of interest, although authority does exist for deferring division of the marital residence for reasonable periods of time. (Ill. Rev. Stat. 1981, ch. 40, par. 503(c)(4); *In re Marriage of Woolsey* (1980), 85 Ill. App. 3d 636, 406 N.E.2d 1142; *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17.) Awarding interest under these facts effectively assures the appellee that his portion of the marital property will appreciate at the statutory rate annually, while denying the appellant any such assurance. Indeed, should the actual rate of appreciation of the real estate fall short of the statutory rate, the appellee would enjoy a greater appreciation on his share of the marital property, *viz.*, the marital residence, at the expense of his spouse. We believe fairness requires both parties to share equally in the appreciation or depreciation of the property, subject to a credit to the appellant for mortgage payments and improvements. Thus on remand, we direct the circuit court to reconsider its division of this marital asset following the rule of *In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 397 N.E.2d 17.

■ The circuit court ordered the appellee to pay $530 monthly for the unallocated support and maintenance of the appellant and her minor children. As previously recounted, the appellee enjoyed an income of $39,852 annually, while the appellant earned merely $9,100 annually. Adjusting the earned incomes for the amount of maintenance and support, the appellee is left with a gross income of $33,492, while the appellant has only $15,460. The appellant testified that she incurred annual expenses totalling $14,529, a figure based upon testimony received before the emancipation of Kelly. Nevertheless, the appellant is asked to support two children and herself with less than half the funds available to the appellee. Clearly, the appellee will have substantial discretionary income at his disposal, income which would have enhanced the standard of living of the children had the marriage not been dissolved. The appellant will have little if any such discretionary income. Equally as clear is the fact that the resources of the appellee are far superior to those of the appellant as regards their

ability to provide for the children's support. We conclude after reviewing these factors and the others enumerated in sections 505 and 504 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, pars. 505 and 504) that the award of maintenance and support is inadequate. Accordingly, the award is reversed and the matter remanded to the trial court with directions to consider the relative resources of the parties and the standard of living established during the marriage.

Finally, the appellant urges that the circuit court erred in failing to award her the full amount of the attorney fees which she incurred as a result of this litigation. As we have noted on prior occasions, an award of attorney fees is appropriate only after considering the financial resources of the parties. (Ill. Rev. Stat. 1981, ch. 40, par. 508(a).) Inasmuch as our decision today will cause this matter to be remanded to the trial court for further proceedings regarding the division of marital property and the award of maintenance, we believe the financial resources of the parties to be too uncertain to evaluate this alleged error, and thus we decline to consider same. Also, since the mathematical error which was the subject of appellant's motion in this court involved the division of marital property, we believe our reversal of the division previously ordered renders the motion moot.

For the reasons above set forth, and in reliance on the authorities cited and the policies therein embodied, the judgment of the circuit court is reversed with directions for further proceedings consistent with this opinion.

Reversed and remanded with directions.

ALLOY and STOUDER, JJ., concur.