*In re* MARRIAGE OF MARGARET C. KORPER, Petitioner-Appellee and Cross-Appellant, and CHRISTOPHER C. KORPER, Respondent-Appellant and Cross-Appellee.

Fifth District    No. 5—83—0350

Opinion filed February 26, 1985.—Rehearing denied April 10, 1985.

HARRISON, J., dissenting.

Robert J. Hillebrand, of Belleville, for appellant.

Robert E. Wells, Jr., of Pessin, Baird & Wells, of Belleville, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:
Respondent Christopher Korper appeals, and petitioner Margaret Korper cross-appeals, from the property disposition and maintenance provisions of an amended judgment of dissolution of marriage entered by the circuit court of St. Clair County on April 19, 1983. On appeal, respondent contends (1) the trial court erred in its choice of method of apportioning respondent's military pension, (2) the trial court erred

in its finding that petitioner was entitled to maintenance, and (3) the trial court erred in ordering respondent to pay a portion of petitioner's legal fees. On cross-appeal, petitioner argues that the trial court failed to apportion the marital property justly. In addition, petitioner has sought an order requiring respondent to pay petitioner's legal fees in connection with the defense of this appeal.

The parties were married on April 18, 1961, and were separated on November 22, 1980. At the time the proceedings were commenced petitioner was 42 years old and respondent was 43 years old. During the course of their marriage two children were born and two children were adopted. At the time the proceedings were commenced the two children born to the marriage were still minors and were living with petitioner. Respondent was a lieutenant colonel in the United States Air Force stationed at Scott Air Force Base. Petitioner worked at home as a homemaker.

The judgment from which this appeal and cross-appeal are taken awarded custody of the two minor children born to the parties to respondent. There is no dispute with regard to that award. The disputed portions of the judgment, detailed below as necessary, disposed of the parties' marital property, awarded maintenance to petitioner and ordered respondent to pay a portion of petitioner's legal fees.

■ Respondent's first contention of error concerns the trial court's choice of method used to dispose of the retirement benefits to which respondent was entitled under his military pension. At the outset, we note that respondent is appealing the method of disposition used by the trial court, not the value placed on those benefits nor that the value of those benefits was subject to division as being marital property. Based upon a stipulation of the parties, the trial court found the present value of the retirement benefits respondent was entitled to under his military pension to be $296,000. The trial court then found respondent's rights to the retirement benefits acquired during the marriage of the parties to be marital property and awarded petitioner $145,000 as her interest therein. The trial court ordered respondent to pay the petitioner the entire $145,000 within 30 days of the date the judgment of dissolution became final. Until that payment was made, respondent was required to pay petitioner interest thereon in the form of additional maintenance.

Respondent contends that Federal law precludes any allocation of military retirement benefits prior to such time as the benefits are actually received by the retiree. Respondent's argument is based on the United States Supreme Court's ruling in *McCarty v. McCarty* (1981), 453 U.S. 210, 69 L. Ed. 2d 589, 101 S. Ct. 2728, wherein the court

held that Federal law precluded the division of military pensions in dissolution proceedings held pursuant to State law. Respondent is cognizant of the subsequent enactment by Congress of the "Uniformed Services Former Spouses' Protection Act" (Pub. L. No. 97—252, 96 Stat. 718, 730-38 (1982)), and that the law was enacted by Congress as a response to the *McCarty* decision. Section 1002(a) of the Act (96 Stat. 718, 730-31) amends 10 U.S.C. sec. 1408(c)(1) to read as follows:

"(c)(1) Subject to the limitations of this section, a court may treat *disposable retired or retainer pay* payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (Emphasis added.)

Respondent argues that since "disposable retired or retainer pay" is subject to various payroll-related deductions, the amount thereof can only be finally determined once the payment is actually made to the retiree. Respondent maintains that by this use of the phrase "disposable retired or retainer pay," Congress "clearly" intended that the Federal law preemption of State laws that allow division of military retirement benefits remain in effect until those benefits are actually paid to the retiree. Thus, it is respondent's position that by enacting the law Congress intended to create only a narrow exception to the holding in *McCarty*. We disagree.

We find respondent's statutory interpretation to be unduly technical and contrary to the express intent of Congress as reflected in the following legislative history of the Act.

"The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of nondisability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisible. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26,

1981 and the effective date of this legislation the opportunity to return to the courts to take advantage of this provision." (S. Rep. No. 502, 97th Cong., 2d Sess. 16 (1982), U.S. Code Cong. & Admin. News 1982, 1596, 1611.) It is evident from this legislative history that Congress' intent in enacting the law was to abrogate all applications of the *McCarty* decision by placing the courts of the several States into a pre-*McCarty* position. (See, *e.g., Walentowski v. Walentowski* (1983), 100 N.M. 484, 672 P.2d 657; *In re Marriage of Frederick* (1983), 141 Cal. App. 3d 876, 190 Cal. Rptr. 588; *In re Marriage of Steczo* (Ariz. App. 1983), 135 Ariz. 199, 659 P.2d 1344; *In re Marriage of Buikema* (1983), 139 Cal. App. 3d 689, 188 Cal. Rptr. 856.) Respondent's argument, relying as it does on the continuing partial application of the *McCarty* decision, must therefore fail.

Our law prior to *McCarty* recognized a marital property interest in retirement benefits where the rights thereto were acquired during marriage. (*In re Marriage of Coram* (1980), 86 Ill. App. 3d 845, 408 N.E.2d 418.) This is true regardless of whether the interest is matured, vested or nonvested, or contributory or noncontributory. *In re Marriage of Pieper* (1979), 79 Ill. App. 3d 835, 398 N.E.2d 868; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.

Our law prior to *McCarty* likewise recognized a marital property interest in retirement benefits from military pensions. (*In re Marriage of Musser* (1979), 70 Ill. App. 3d 706, 388 N.E.2d 1289.) Following the *McCarty* decision our supreme court overruled the appellate court's decision in *Musser*, concluding that the "case [was] governed by *McCarty.*" (*In re Marriage of Musser* (1981), 87 Ill. 2d 68, 70, 429 N.E.2d 530, 531.) The effect of the Uniformed Services Former Spouses' Protection Act is, in turn, to overrule our supreme court's decision in *Musser*, leaving us free to apply the law as it was before that decision.

■ In general, the distribution of marital property is a matter that rests within the sound discretion of the trial court, the exercise of which will not be disturbed absent an abuse thereof. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. (*In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.) The choice of the method of apportioning the present value of the marital property interest in the retirement benefits to which a spouse is entitled is similarly a matter left to the discretion of the trial court. (*In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300; *In re*

*Marriage of Papeck* (1981), 95 Ill. App. 3d 624, 420 N.E.2d 528.) It is with these principles in mind that we review the decision of the trial court relating to the allocation and payment of the pension. Illinois courts have held that in valuing employment benefits of this nature, the benefits that have accrued should be considered marital property, regardless of whether the benefit is vested or nonvested. *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 442 N.E.2d 557; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511; *In re Marriage of Donley* (1980), 83 Ill. App. 3d 367, 403 N.E.2d 1337; *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.

As already related, the court, based upon a stipulation of the parties, found the value of respondent's pension to be $296,000, awarded $145,000 thereof to petitioner and ordered it paid within 30 days. The only source of funds available to the respondent for payment of the $145,000 within the time limited was a money management account in the amount of $208,000. The money management account originally had been created by respondent with $162,000 he had inherited from his parents and thereafter enlarged with its earnings. Petitioner had never made any contribution to this account. The court found the money management account to be marital property and awarded the petitioner $15,000 as her share. Respondent raised no issue with regard to finding of the court that the money management account was marital property. The $15,000, together with the $145,000 share of the value of respondent's pension, made a total cash payment due from respondent to petitioner of $160,000, the entirety of which was to be paid within the 30 days.

There is a sharp dispute over the method chosen by the trial court to give the petitioner her interest in respondent's military pension. It should be mentioned that the pension is not a contributory one on the part of respondent; it does not accumulate any cash value and has no provision for a survivor's benefit. Respondent objects to the petitioner's receiving the entirety of her interest in the pension in cash payable from marital property other than the pension itself. He asserts this to be inequitable in that it affords the petitioner her full interest now, whereas he must fulfill all the assumptions made by the actuary in arriving at the value of the pension in order to collect the portion of the pension settled upon him by the court's order. Respondent claims there is no reason why he should be made to bear all the uncertainty and supposition that will attend the eventual realization of the value of the pension as fixed by an actuarial process.

The stipulated value of the pension was derived by an actuary re-

tained by petitioner. The actuary utilized the assumptions ordinarily and necessarily indulged in by actuaries. The value derived was necessarily the result of projections based upon certain assumptions such as respondent's age, remaining work years, age at retirement, life expectancy, and so forth. The figures used by an actuary to predict life span are unavoidably averages, since some persons live longer than others. This being so, the projections used cannot speak with certainty as to the time of death of a particular person. The ultimate value of the pension depends upon respondent's survival for the projected term of years, the preservation of his pension entitlement rights and the constancy of a fund (in this case, the continuing will of Congress) to make the pension payments for the duration of respondent's life.

Thus, there are several areas of uncertainty that surround respondent's receipt of his pension benefits. The order of the trial court completely relieves the petitioner of any uncertainty the future may hold by awarding her the entirety of her assigned portion at this time. The respondent bears the entire burden of uncertainty, including the possibility that he may receive no part of his pension at all.

Respondent argues that "since the husband's retirement is about five years in the future, the most equitable way to handle the military retirement [pension] would be to wait until retirement occurs and divide the income as it is received by the husband under the reserved jurisdiction approach." The petitioner, on the other hand, argues that the trial court had a choice between "immediate offset and deferred distribution of husband's retirement benefits. Its choice of immediate offset was not only clearly within its discretion, but was the preferable approach. The virtues of the immediate offset method are that it is final, equitable, and immediate."

The terms "reserved jurisdiction approach" and "immediate offset" have evolved in case law as courts have considered the problem of apportionment and payment of pension entitlement by the parties to a marriage dissolution proceeding. Illinois cases have acknowledged both methods of disposition. (*In re Marriage of Evans* (1981), 85 Ill. 2d 523, 426 N.E.2d 854.) In an appropriate case, the court can reduce the pension plan to present value and award an offsetting value of money or property to the nonemployee spouse. This is the immediate offset approach. (*In re Marriage of Degener* (1983), 119 Ill. App. 3d 1079, 458 N.E.2d 46; *In re Marriage of Bentivenga* (1982), 109 Ill. App. 3d 967, 441 N.E.2d 336; *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300.) In other cases, the court can order the employee spouse to pay the allocated portion of the fund, as

disbursed, retaining jurisdiction to enforce the decree. This is the reserved jurisdiction approach. *In re Marriage of Degener* (1983), 119 Ill. App. 3d 1079, 458 N.E.2d 46; *In re Marriage of Wisniewski* (1982), 107 Ill. App. 3d 711, 437 N.E.2d 1300; *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511.

Variations in ages, amounts of property, both marital and nonmarital, duration of marriages, health, types of pension, amount of benefits to be received and other circumstances that may be encountered in dissolution proceedings make it impractical to hold that the disposition of pension entitlement in a dissolution proceeding pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 503) must always be limited to one approach or the other. All pension disposition cases cannot be fitted into the same mold, and a unitary approach would prove unwise.

Notwithstanding the availability of the two methods of allocation, our review of the Illinois cases that have considered the problem of disposition of pensions as marital property has led to the conclusion that the "immediate offset" approach has been much more acknowledged than used. The reason for hesitancy in using the "immediate offset" approach is obviously because of the disparity in which the parties are placed; the one receives the pension payment or a property disposition offset immediately while the other must undergo the attendant uncertainties in the collection of pension benefits and may receive the apportioned share, part of it, or nothing at all. The supreme court stated in *In re Marriage of Evans* (1981), 85 Ill. 2d 523, 528, 426 N.E.2d 854, 857:

> "[I]f the payment of benefits is contingent upon future events, such as the continuation of employment, a present award based on the discounted value of future payments to the employed spouse will prove excessive if the amount of benefits which he actually receives is less than the amount which was assumed."

The case of *In re Marriage of Fairchild* contains a well-reasoned analysis of the problem that arises when statistically generated actuarial assumptions are adopted as the determinant of value and benefits to be received in a particular case. We need not quote at length from that case, since the conclusion will suffice:

> "A potentially unfair situation thus arises, as the employee spouse risks making a final division of property with the nonemployee spouse based upon a fixed value of future pension/savings benefits which may, in fact, be valueless if the actuarial assumptions for the hypothetical person are inapplicable to the very real person before the court.

* * *

The dilemma, then, is that while it is unfair to ignore the value of nonvested benefits in the division of marital property, those benefits in some instances being the only significant marital asset, it is also unfair to effect a present division of the marital property utilizing an actuarial value of those benefits computed in reliance on speculative, albeit actuarily accepted assumptions." *In re Marriage of Fairchild* (1982), 110 Ill. App. 3d 470, 474-75, 442 N.E.2d 557, 560.

In *In re Wisniewski* the court stated that it would be possible to make a division of a nonvested pension by taking a value as determined by actuarial evidence and then discounting that amount to an extent in consideration of the probability it will not vest, further discount the new amount to present value and then determine the marital portion of that amount. "In some cases," the *Wisniewski* court said, "the trial court may be able to evaluate this risk in determining the value." (*In re Wisniewski* (1982), 107 Ill. App. 3d 711, 717, 437 N.E.2d 1300, 1305.) Understandably, the *Wisniewski* court did not adopt the suggested procedure. The assumptions required would be too many and too farfetched for use by a court seeking to make an equitable disposition of marital property pursuant to section 503 of the Illinois Marriage and Dissolution of Marriage Act. The court in the *Wisniewski* case thought the "reserved jurisdiction" approach was the more reasonable one for the facts it had under consideration. Likewise, we think that approach the more reasonable one for the case now before us.

■ Petitioner argues that respondent cannot contest the court's allocation of the pension because he stipulated at the trial that its value was that fixed by the actuary, $296,000. But we agree with respondent that although there was an agreement as to value, there was no agreement that payment of the share of the pension assigned to petitioner could be made at present out of other marital property. The figure assigned as value was one based upon actuarial assumptions that well may not transpire. Since the valuation of the pension is so great a part of the total marital assets, we can find no basis to justify an order that casts the entire burden of uncertainty upon the respondent, and it was inequitable to do so.

■ Respondent in his brief has addressed issues and arguments to the court regarding the amount and duration of maintenance he was ordered to pay petitioner and regarding the award of petitioner's attorney fees to be paid by him. In a cross-appeal, petitioner argues that the division of marital property made by the court was inequita-

ble and asks relief on that issue. However, since we have overturned the order of the trial court as it related to the disposition of the pension, and that action will have a very marked effect upon the disposition of the marital property, we deem it best to set aside the entirety of the judgment of the court as it pertains to the disposition of marital property, maintenance and attorney fees, and remand the case for a reconsideration thereof. Our action with regard to the pension will doubtless call for variation in the disposition as originally provided by the court. Our only instruction upon remand is that in making disposition of respondent's military pension, the court should allocate the portion of the pension found to be marital property upon an "as received" basis, the so-called "reserved jurisdiction" method.

■ Finally, petitioner has filed a motion to dismiss respondent's appeal under the release of errors doctrine. We have considered the motion to dismiss and respondent's response thereto and have concluded that no change of position has been effected that will work a detriment or prejudice to petitioner and that ample assets remain under the designation of marital property to afford the court full opportunity to make any compensating orders that may be indicated upon rehearing. For these reasons, petitioner's motion to dismiss respondent's appeal is denied.

Reversed and remanded with instructions.

KASSERMAN, J., concurs.

JUSTICE HARRISON, dissenting:

As recognized by the majority, the distribution of marital property upon a dissolution of marriage rests within the sound discretion of the trial court and will not be disturbed by a reviewing court absent an abuse of discretion. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) While a pension distribution of the type made by the trial court in this case might constitute such an abuse under different circumstances, it does not constitute one here. This is not a case where use of the "immediate offset" approach operates to impose an intolerable financial burden on the pension holder; indeed, it seems apparent from the record that respondent can readily comply with that provision of the judgment directing him to pay petitioner $160,000. Moreover, while the majority discusses in detail the problems inherent in determining the present value of pension plans, the fact remains that the parties stipulated to a value here, and thus provided the trial court with an undisputed basis upon which to utilize

the "immediate offset" approach. Lastly, as noted by petitioner, an award of the type made here ends the economic ties between the parties and allows them to plan for their futures with a reasonable degree of certainty. In view of these significant factors supporting the judgment, I simply cannot say that it constitutes an abuse of discretion.