In re David L. BROWN, Debtor.

Betty J. BIGELOW, f/k/a
Brown, Plaintiff,

v.

David L. BROWN, Debtor.

Bankruptcy No. 93 B 06822.
Adv. No. 93 A 0828.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 27, 1994.

Leigh M. Rawson, Leo Flanagan, Brittain & Ketcham, Elgin, IL, for plaintiff.

William A. Feda, Elgin, IL, for debtor.

## MEMORANDUM OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

At present, there are two related proceedings pending before the Court, both brought by the debtor's former spouse. The first is a

motion to modify the automatic stay and the second is a complaint to determine the dischargeability of a debt. The parties have filed cross motions for summary judgment under Fed.R.Civ.P. 56, made applicable to adversary proceedings in bankruptcy cases by Fed.R.Bankr.P. 7056. The motions for summary judgment are made only in connection with the complaint to determine dischargeability filed by the Plaintiff, Betty J. Bigelow, f/k/a Brown. Nevertheless, the disposition of the summary judgment motions in the adversary proceeding also necessarily determines the outcome of the stay motion. Accordingly, for the reasons stated below, this court denies the motion to lift the automatic stay as moot, denies both motions for summary judgment as moot, and dismisses the adversary complaint as unnecessary.

## FACTS

The debtor, David Brown, and the plaintiff in both matters, Betty Bigelow f/k/a Brown, were married on October 9, 1965. Some two decades later, on May 27, 1986, the two were divorced. After a bench trial, the state court judge entered a Judgment for Dissolution of Marriage which stated, *inter alia:*

> [Betty Brown] is awarded fifty percent (50%) of the present value, as of the date of the Judgment, in the pension plan in which [David Brown] participates through his employer, AT & T. An appropriate Qualified Domestic Relations Order ("QDRO") shall be entered in conjunction with this Judgment.

A QDRO was entered on May 27, 1986. Sometime thereafter, the Debtor took early retirement and began receiving his retirement benefits. During that time, all of the benefits were paid directly to the Debtor. The Plaintiff learned of this situation and returned to the state court to enforce the divorce decree. On September 17, 1991, the state court ordered the Debtor to pay $356.07 per month to the Plaintiff. Unfortunately, the Debtor again failed to comply with the state court's order, and the Plaintiff was forced yet another time to seek relief in state court.

On December 17, 1992, the Circuit Court entered an order directing AT & T, the Debtor's former employer and pension plan administrator, to pay the sum of $356.07 per month from the Debtor's pension plan payments directly to the Plaintiff. An additional sum of $150.00 was to be paid directly to the Plaintiff until she was reimbursed the sum of $1,780.35 representing the amount she should have been paid for her portion of the pension payments made August through December, 1992, inclusive. A certified copy of the QDRO was filed with the state court in conjunction with this order and served on AT & T. Apparently, this QDRO did not meet with AT & T's requirements for distribution of pension payments, and no payments were made directly to the Plaintiff from the pension plan.[1]

On March 29, 1993, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. In his schedules, the Debtor listed the Plaintiff as a judgment creditor holding an unsecured nonpriority claim in the amount of $141,429.09. On July 1, 1993, shortly after the debtor filed his Chapter 7 petition, the Plaintiff obtained an amended QDRO from the state court. This amended QDRO satisfied AT & T's requirements. The Plaintiff made no effort to obtain relief from the automatic stay created under Section 362(a) before proceeding in the state court postpetition.[2]

The Plaintiff filed her initial complaint objecting to discharge on July 2, 1993.[3] On August 12, 1993, this court stated in open court that the amended QDRO entered in the

---

**1.** A plan administrator has the authority to determine whether an order meets QDRO requirements. *See* 29 U.S.C. §§ 1056(d)(3)(B)(i)(I), (II), and (G)(ii); *see also* 26 U.S.C. § 4141(p)(6)(A)(i), (6)(A)(ii), and (6)(B).

**2.** The Plaintiff argues that the amended order was entered because it was more efficient and judicious to enter the order than to engage in litigation to enforce the May 27, 1986 order.

According to the Plaintiff, both the original and amended QDRO orders included the same information and language but differed in form.

**3.** The complaint actually objects to the dischargeability of an alleged debt owed to the Plaintiff rather than seeking to block the debtor's discharge in its entirety. *Compare* 11 U.S.C. § 523 *with* 11 U.S.C. § 727.

16th Judicial Circuit dated July 1, 1993 was void and of no force and effect. This court then *sua sponte* dismissed the Plaintiff's complaint objecting to discharge. However, on October 14, 1993, this court, recognizing that it may have acted precipitously, entered a minute order reinstating the Plaintiff's adversary complaint and granting the Plaintiff leave to amend the complaint within 14 days.

On October 20, 1993, an order was entered in state court with regard to the divorce case staying the effect of the July 1, 1993 order until the bankruptcy court had an opportunity to determine the rights of the Debtor and the Plaintiff in the pension. The Plaintiff filed her motion to lift the automatic stay on October 29, 1993.[4] Also on October 29, 1993, the Plaintiff filed her Amended Complaint Objecting to Discharge. On December 16, 1993, the Debtor filed his answer to the Amended Complaint Objecting to Discharge. Thereafter, on January 6, 1994, the Plaintiff filed a Motion for Summary Judgment in the Amended Complaint Objecting to Discharge.

The Debtor responded to the Plaintiff's motion for summary judgment on February 4, 1994. At the same time, he filed his own motion for summary judgment with respect to the Complaint Objecting to Discharge. On March 10, 1994, the Plaintiff filed her Response to Defendant's motion for Summary Judgment.[5]

In support of her motion for summary judgment, the Plaintiff argues that as a result of the divorce decree, her interest in the pension plan is her sole and separate property and that accordingly, any pension payments received by the Debtor from her portion of the pension plan were received by the Debtor as constructive trustee for the Plaintiff's benefit. Consequently, according to the Plaintiff, her interest in the pension plan is not part of the bankruptcy estate and is not a debt subject to discharge.

In response, the Debtor argues that the divorce order did not create a property right in the Debtor's pension. Instead, he contends that the decree was a property settlement which thereby created a debtor/creditor relationship between the parties. It is his view that the entire pension plan continues to be his sole and separate property. Further, the Debtor argues that even if the Plaintiff has a property right in the pension, that right can only be "perfected" when a valid QDRO is submitted to the Debtor's pension plan administrator, AT & T. According to the Debtor, since the July 17, 1993 Amended QDRO was entered in violation of the automatic stay and is void, the Plaintiff has failed to "perfect" her property rights she might have against a levying creditor. Thus, the Debtor argues, the Plaintiff is merely an unsecured creditor of the Debtor (apparently relying on 11 U.S.C. §§ 544(a) and 522(h)), and any debt owing to the Plaintiff is dischargeable in bankruptcy.

### JURISDICTION AND PROCEDURE

The court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b) as

---

4. Due to procedural difficulties and confusion, the Debtor had previously filed his Response to Motion to Lift Automatic Stay on October 25, 1993. *See also* footnote 5, *infra*.

5. It should be noted that, as a result of party error and misunderstanding, these matters have become a docketing nightmare. On December 16, 1993, this court set a briefing schedule for the Plaintiff's Motion for Summary Judgment in the *Amended Motion to Lift the Automatic Stay*. However, on January 6, 1994, the Plaintiff filed a Motion for Summary Judgment in the *Amended Complaint Objecting to Discharge*, i.e., in the wrong matter. In response, on February 4, 1994, the Debtor filed an Answer to Plaintiff's Motion for Summary Judgment/Defendant's Motion for Summary Judgment in the Complaint Objecting to Discharge. Shortly thereafter, on March 10, 1994, the Plaintiff filed her Response

to Defendant's Motion for Summary Judgment in the Complaint Objecting to Discharge.

In an attempt to correct the procedural mistakes and clean up the docket, on March 24, 1994, this court once again set a briefing schedule in the Plaintiff's *Motion to Lift the Automatic Stay*. Under this schedule, the Debtor was given until April 7, 1994 to "File an Answer to Motion to Lift Stay" (which actually *should* have read to "File an Answer to the Plaintiff's Motion for Summary Judgment in the Motion to Lift the Stay") and the Plaintiff was given until April 21, 1994 to file her Response.

For reasons unclear to the court, nothing was filed by either party after March 10, 1994. Despite the parties' failure to comply with a direct order of the court, this court has determined that the record before it is sufficient to enable it to resolve the motions pending before it.

matters arising under §§ 362 and 523 of the Bankruptcy Code. These matters are core proceedings under 28 U.S.C. § 157(b)(2)(G) and (I) and are before the court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this court for hearing and determination.

## STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DISCUSSION

■ In the present matter, the court is called upon to determine whether the division of the Debtor's pension under the state court decree gave rise to a separate property interest in the pension in favor of the Plaintiff or merely created a debt owing to the Plaintiff. If the decree creates a debt rather than a property interest, the court will have to determine whether the award to the Plaintiff in the divorce decree is in the nature of alimony, maintenance or support, and therefore is nondischargeable, or whether it is a debt resulting from a division of property and is dischargeable. *See* 11 U.S.C. §§ 727(a), 523(a)(5).

■ The question of whether or not the Plaintiff's interest in the pension plan is her separate property interest, and thus not part of her former husband's bankruptcy estate, is determined by reference to state law. *See e.g., Barnhill v. Johnson,* —— U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *Jones v. Atchison,* 925 F.2d 209 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991). Under Illinois law, a pension fund created during the marriage is marital property subject to division. *In re Marriage of Norfleet,* 243 Ill.App.3d 925, 612 N.E.2d 939, 184 Ill.Dec. 63 (1993); *In re Marriage of Roehn,* 216 Ill.App.3d 891, 894, 576 N.E.2d 560, 562, 159 Ill.Dec. 891, 893 (1991) (non-employee spouse's future benefits from pension fund are a form of deferred compensation and therefore property); *In re Marriage of Hackett,* 113 Ill.2d 286, 497 N.E.2d 1152, 100 Ill.Dec. 790 (1986) (same); *In re Marriage of Korper,* 131 Ill.App.3d 753, 757, 475 N.E.2d 1333, 1336, 86 Ill.Dec. 766, 769 (1985). The rights of the non-participant spouse in the pension or retirement fund of the other remain inchoate during the marriage. However, upon entry of a judgment of divorce, ownership vests in the spouse to whom such property has been distributed. *See e.g. Roehn,* 216 Ill.App.3d at 894, 576 N.E.2d at 562, 159 Ill.Dec. at 893 (insofar as ex-wife's beneficial interest in pension fund was acquired during the marriage, upon dissolution of marriage ex-wife became co-owner of the pension benefits as marital property).

The majority view among courts considering the question in the bankruptcy context is in accord with Illinois law, i.e., that a former spouse's interest in a debtor's pension becomes the sole and separate property of the nondebtor spouse upon entry of a final judgment of divorce. The divorce decree does not create a debtor/creditor relationship between the debtor spouse and the nondebtor spouse. Instead, each becomes an owner of a portion of the pension. *In re Potter,* 159 B.R. 672, 674 (Bankr.N.Y.1993); *see generally In re Byler,* 160 B.R. 178, 180 (Bankr. N.D.Okl.1993); *Matter of Newcomb,* 151 B.R. 287 (Bankr.M.D.Fla.1993); *In re Resare,* 142 B.R. 44, 46 (Bankr.D.R.I.1992), *aff'd* 154 B.R.

399 (D.R.I.1993); *In re Long*, 148 B.R. 904 (Bankr.W.D.Mo.1992) (interest of non-employee spouse in non-military pension is the sole property of such spouse); *In re Ledvinka*, 144 B.R. 188, 192 (Bankr.M.D.Ga.1992) (*citing Bush v. Taylor*, 912 F.2d 989, 993 (8th Cir.1990)); *In re Zick*, 123 B.R. 825 (Bankr. E.D.Wis.1990) (where prepetition divorce decree awarded wife portion of pension, that portion did not constitute husband's property at time of bankruptcy filing and thus could not be excepted from discharge); *In re Farrow*, 116 B.R. 310 (Bankr.M.D.Ga.1990); *In re Benich*, 811 F.2d 943, 945 (5th Cir.1987); *In re Chandler*, 805 F.2d 555 (5th Cir.1986) (monthly army retirement benefits awarded to wife pursuant to divorce decree were sole and separate property of wife and did not become property of the debtor's estate); *accord In re Beattie*, 150 B.R. 699, 701 (Bankr. S.D.Ill.1993).

Even if the debtor spouse has actual possession of the pension plan or payments from the pension plan, the nondebtor's interest in the pension plan is still that nondebtor spouse's separate property and does not become property of the estate. Instead, the debtor spouse holds that property interest of the nondebtor spouse as a constructive trustee for the benefit of the nondebtor spouse. *In re Kinder*, 133 B.R. 151, 152 (W.D.Miss. C.D.1991) *citing Bush v. Taylor*, 912 F.2d at 993; *In re Dahlin*, 94 B.R. 79, 81 (Bankr. E.D.Va.1988), *aff'd* 911 F.2d 721 (4th Cir. 1990) (debtor actually became a trustee for ex-wife at the time divorce decree was entered and ex-wife's interest in her portion of pension benefits vested); *In re Brown*, 21 B.R. 377, 379 (Bankr.E.D.Cal.1982). In general, property that a debtor holds as a trustee does not become property of the bankruptcy estate. *See* 11 U.S.C. § 541(d); *Begier v. Internal Revenue Service*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). In the present situation, i.e., where some monthly pension payments have been distributed to the Debtor prepetition, he holds the Plaintiff's half of each payment as a constructive trustee. *In re Brown*, 21 B.R. at 379. As to the half of the payments made, the Debtor holds bare legal ownership. The equitable interest in those payments is vested in the Plaintiff. *Id.*

Under Section 541 of the Bankruptcy Code, the bankruptcy estate is comprised of "all legal or equitable interest of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). However, Section 541(d) provides:

> Property in which the debtor holds .. only legal title and not an equitable interest .. becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the* extent of any equitable interest in such property that the debtor does not hold.

*See* 11 U.S.C. § 541(d). In the instant proceeding, it is clear that all the Debtor has, at best, is a bare legal interest in the Plaintiff's half of the pension plan. Upon the entry of the order of the divorce court finally allocating rights in the pension plan, all rights to her half of the pension vested in the Plaintiff. No further steps needed to be taken under Illinois law to perfect her interest. Therefore, her interest in the pension never became part of the Debtor's bankruptcy estate regardless of whether he held it as trustee for her benefit (as arguably was the case before the valid QDRO was entered), or whether she held it as her separate property. *See* 11 U.S.C. § 541(d); *see also In re Kinder*, 133 B.R. at 153.

In fact, upon entry of the divorce judgment, the benefits became the sole and separate property of the Plaintiff. *Potter*, 159 B.R. at 674. The QDRO merely served to enforce her preexisting property rights in the pension. That follows from the fact that had the Debtor performed his duty as a constructive trustee and given the Plaintiff her half of the monthly payments voluntarily, no QDRO would have been necessary. Thus, the timing of the entry of a valid QDRO is irrelevant in the determination of her rights.[6]

---

6. The Debtor argues that the Plaintiff's property interest was never "perfected" because of her failure to file a QDRO which complied with AT & T standards. *See* 29 U.S.C. §§ 1056(d)(3)(G)(i)(I), (II), and (ii). This argument is without merit.

It is true that in order for an ex-spouse to have an enforceable interest against a spouse's ERISA-qualified plan administrator there must

■ By the same token, since the Plaintiff's equitable interest in the pension fund was neither property of the Debtor at the time the bankruptcy petition was filed, nor property of the bankruptcy estate, the automatic stay did not prevent the Plaintiff from filing for an amended QDRO in state court. *See* 11 U.S.C. §§ 541(d), 362(a). The automatic stay only serves to protect property in which the debtor and/or the estate has an interest from creditor collection efforts. *See* 11 U.S.C. § 362(a); *see also In re Geris,* 973 F.2d 318 (4th Cir.1992). The Plaintiff is not a creditor. Therefore in pursuing her rights against the pension postpetition, the Plaintiff was not seeking to enforce a debt. Nor was the Plaintiff attempting to obtain an interest of the Debtor or of the bankruptcy estate. Instead, the Plaintiff was merely trying to recover her sole and separate property including her half of the property paid to him which is held by the Debtor in a constructive trust for the Plaintiff. As a result, the court's earlier oral ruling finding that the Plaintiff acted in violation of the stay is not correct. This court concludes that filing the amended QDRO was not an act taken in violation of the automatic stay and thus is not null and void. Rather, the amended QDRO

has full effect and should be followed by AT & T.

■ It is somewhat ironic that, for the reasons stated above, the Plaintiff has pursued the wrong litigation strategy in her efforts to recover her property. Since the Plaintiff's interest in the Debtor's pension funds was neither property of the estate nor property of the Debtor, the automatic stay did not apply. Thus, the Plaintiff's motion to lift the automatic stay must be denied as moot. Similarly, since a debtor/creditor relationship was never established between the Plaintiff and the Debtor, there is no debt for this court to discharge. *See Potter,* 159 B.R. at 675 (division of pension did not result in creation of a debtor/creditor relationship).[7] Thus the Plaintiff's complaint to determine dischargeability must be dismissed as unnecessary and the cross motions in the proceeding denied as moot. What the Plaintiff is actually seeking is to reclaim her property which is currently being held hostage by the Debtor. The appropriate action to achieve such a result is to file a complaint for reclamation.

Finally, this court notes that one advantage of declaring that pension awards are the

be a qualified domestic relations order (QDRO) in place. A QDRO is an express statutory exception to the anti-alienation provisions required for pensions governed by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. § 1056(d)(1). Restrictions on assignment and alienation "shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except .. if the order is determined to be a qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A).

In the instant case, a QDRO was filed simultaneously with the Dissolution of Marriage decree. However, this QDRO did not comply with AT & T requirements. Under the ERISA provisions, until an acceptable QDRO is filed, a state court's division of a pension as marital property does not create a legal right to the former spouse's property that the non-employee spouse may enforce against the plan administrators. *In re Long,* 148 B.R. at 907. However, although the Plaintiff had no recognizable *legal right* under ERISA to the Debtor's pension benefits because she was unable to obtain the QDRO prepetition, the Plaintiff did have an *equitable interest* in the Debtor's pensions arising from the entry of the

decree of dissolution. *Id.* Additionally, as discussed below, the Plaintiff did eventually file an Amended QDRO which complied with AT & T's standards which currently remains in effect. For these reasons, the Plaintiff's failure to file prepetition a QDRO fulfilling AT & T's standards in no way adversely affects her equitable interest in the Debtor's pensions and her right to recover this property. *But see Norfleet,* 243 Ill.App.3d at 932, 184 Ill.Dec. 63, 612 N.E.2d 939 (holding that "no QDRO—no interest").

7. Some courts have held that the failure of a debtor to remit to his ex-wife her equitable interest in each payment amounts to a breach of the fiduciary duty existing between the debtor and ex-wife as a result of the constructive trustee relationship. Under this theory, the obligation of the debtor to remit to the ex-wife her equitable interest in each pension payment is non-dischargeable under § 523(a)(4) (disallowing discharge for any debt for fraud or defalcation while acting in a fiduciary capacity). *See e.g. Brown,* 21 B.R. at 379. However, this court concludes that a debtor/creditor relationship never existed between the Debtor and the Plaintiff and thus there is no debt to discharge. *Accord Potter,* 159 B.R. at 675.

separate property of the financially dependent spouse is to discourage:

> income earning spouses ... from using the support exception [of the Bankruptcy Code] to escape from their divorce obligations. There is some evidence in the cases to suggest that supporting spouses have tried to avoid marital obligations by declaring bankruptcy.

Throne, *Pension Awards in Divorce and Bankruptcy*, 88 Colum.L.Rev. 194, 211, n. 104 (1988) *citing In re Chandler*, 805 F.2d 555, 556 (5th Cir.1986), *cert. denied*, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 837 (1987) (husband declares bankruptcy after Army decides to pay pension directly to wife); *In re Hall*, 51 B.R. 1002, 1003 (S.D.Ga.1985) (husband files for bankruptcy two months after final divorce decree). The Eighth Circuit echoed this policy in *Bush v. Taylor*:

> [we] doubt that Congress ever intended that a former wife's judicially decreed sole and separate property interest in a pension payable to her former husband should be subservient to the Bankruptcy Code's goal of giving the debtor a fresh start.

912 F.2d at 994; *see also Resare*, 142 B.R at 47.

### CONCLUSION

For the reasons stated in this memorandum opinion, the court denies the motion to lift the automatic stay as moot, denies both motions for summary judgment as moot, and dismisses the adversary complaint as unnecessary.