*In re* MARRIAGE OF JIM E. NORFLEET, Petitioner, and DIANA L. NORFLEET, Respondent-Appellant (Joshua Norfleet, a Minor, by and through the Guardian of his Estate and Person, Geneva Norfleet, Intervenor-Appellee).

Fourth District   No. 4—92—0780

Opinion filed April 22, 1993.

Darrell E. Statzer, Jr. (argued), of Wilson, Dyar, Moss & Statzer, of Decatur, for appellant.

Jerrold H. Stocks (argued), of Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur, for appellee.

Thomas E. Griffith, of Erickson, Davis, Murphy, Griffith & Walsh, Ltd., of Decatur, guardian *ad litem.*

JUSTICE LUND delivered the opinion of the court:

Respondent Diana L. Norfleet appeals from an order of the circuit court of Macon County denying her request for a qualified domestic relations order (QDRO), assigning her an interest in her deceased ex-husband's 401(k) deferred benefit plan (401(k)).

### FACTS

Jim E. Norfleet and Diana L. Norfleet were married in 1978. One child, Carie L. Norfleet (born November 4, 1970), was adopted by Jim and Diana; and one child, Joshua J. Norfleet (born October 16, 1980), was born to Jim and Diana. Diana is disabled by multiple sclerosis.

Jim filed a petition for dissolution of the marriage on August 14, 1991. The petition stated that Jim was employed at Caterpillar and Diana was not employed. On February 7, 1992, a judgment of dissolution of marriage, based upon a marital settlement agreement, was entered in the circuit court of Macon County. That judgment provided in relevant part:

"9. That said marital settlement agreement will settle all issues, and provides as follows:

\* \* \*

d. *Petitioner will pay Respondent $50,000 from his IRA or other retirement account* [emphasis added].

e. Custody of the minor child Joshua Norfleet is awarded to Petitioner with liberal visitation to Respondent. The issue of child support is reserved at this time.

f. Each party is the sole owner of all real and personal property now in their individual possession."

On April 6, 1992, a petition for rule to show cause was filed by Diana's attorneys, alleging Jim owed Diana's attorneys the sum of $750; *Jim had only transferred $27,928.37* of the $50,000 to Diana; and Jim was $40.98 in arrears on medical expenses. According to counsel on April 7, 1992, before there could be a hearing on the petition for rule to show cause, Jim died.

On July 20, 1992, Diana, by her attorneys, filed a motion in the dissolution case, asking for the entry of a QDRO *"instanter."* This

motion alleged $22,071.63 of the $50,000 was still due Diana. It also alleged that Jim, at his death, had a 401(k) at Caterpillar Tractor Company. A QDRO was requested to enable Diana to obtain the $22,071.63 from Caterpillar. Notice of hearing on the motion was given to the administrator of Jim's estate, the Caterpillar Company, and Thomas E. Griffith, guardian *ad litem* for Joshua in cause No. 92—P—187 (Jim's estate).

On August 18, 1992, Geneva Norfleet, guardian of the estate and person of Joshua Norfleet, petitioned to intervene in the dissolution proceeding and filed objections to a QDRO. The petition to intervene states that Joshua was the sole beneficiary of Jim's 401(k) and would be adversely affected by the requested QDRO. The objections to the QDRO provided:

"1. The original Order entered February 7, 1992, does not comply with the requirements for a valid QDRO, thus, it fails to circumvent the anti-assignment proscription of 26 U.S.C. §401(a)(13). The mere filing of the Petition herein admits the foregoing. Further, the original Order provides only for an obligation to pay $50,000.00. It does not create or purport to create or require the assignment of any interest in any account, fund and specifically fails to identify the subject 401(k) plan herein. No intent or agreement to assign any interest in the 401(k) plan can be drawn from the disjunctive language, to wit: 'or other retirement account.' More particularly, a 401(k) plan is a deferred benefit plan.

2. JOSHUA NORFLEET's ownership interest in the 401(k) proceeds was fixed at the time of death of JIM E. NORFLEET. JIM E. NORFLEET's interest and participation in the 401(k) plan terminated and the proceeds therefrom properly are the property of JOSHUA NORFLEET upon JIM NORFLEET's death.

3. This Court no longer has subject matter jurisdiction to enter any Order modifying or assigning the ownership of proceeds or otherwise encumbering or altering the disposition of said proceeds. Further, the Estate of JIM E. NORFLEET has no power to pledge or assign the proceeds for it lacks any interest in these non-probate assets.

4. No basis for the entry of a nunc pro tunc order effecting [*sic*] a QDRO or otherwise altering the judgment actually entered exists. No assignment occurred prior to JOSHUA NORFLEET's ownership rights."

The petition to intervene was allowed by docket order of August 21, 1992, and a hearing on the motion for a QDRO and objections thereto was held on the same date.

On August 25, 1992, the trial court entered a docket order denying the QDRO. The significant part of the order provides:

"There was no Qualified Domestic Relations Order entered, and there was no agreement about any lien being placed upon Mr. Norfleet's I.R.A. or retirement accounts. At the time of his death, he apparently had an I.R.A[.] or 401-K or retirement account of approximately $40,000.00. The issue in the case is—automatically, at his death, did these monies pass to their minor son, or should the balance of the sum, $23,000.00, be paid to the Defendant before the minor receives the balance?

In reviewing the Judgment of Dissolution and the cases cited by counsel, it is the finding of the Court that the judgment, which was entered in February of 1992, basically gave the Defendant, Mrs. Norfleet, a judgment in favor of $50,000.00. There was no agreement that this judgment would be a lien on the Plaintiff's property until the total amount was paid. Based upon the way the judgment was structured and this Court's interpretation of the existing case law, it is the finding of the Court that the monies which Mr. Norfleet had at the time of his death passed automatically to the minor son and that there was no reservation of rights by the original Defendant, Mrs. Norfleet, in those sums. Therefore, the Defendant's request for an entry of a Qualified Domestic Relations Order after the Plaintiff's death shall be denied by the Court."

Diana appeals from this order.

### Qualified Domestic Relations Order

To understand the significance of Federal cases cited by the parties, it is necessary that we understand the difference between the Employee Retirement Income Security Act of 1974 (ERISA) (see 29 U.S.C. §1001 *et seq.* (1988)) and the Retirement Equity Act of 1984 (1984 REA) provision for a QDRO (see 29 U.S.C. §1056(d)(3)(A) (1988)).

ERISA contains a spendthrift provision providing that "benefits provided under the [retirement] plan may not be assigned or alienated." (29 U.S.C. §1056(d)(1) (1988).) However, State court domestic relations orders were considered in some cases as proper exceptions to the limitations of the "may not be assigned or alienated" provision. *United Association of Journeymen & Apprentices of the Plumbing &*

*Pipefitting Industry of the United States & Canada Local 198 A F L-C I O Pension Plan v. Myers* (M.D. La. 1980), 488 F. Supp. 704; *Operating Engineers Local No. 428 Pension Trust Fund v. Zamborsky* (D. Ariz. 1979), 470 F. Supp. 1174, *aff'd* (9th Cir. 1981), 650 F.2d 196; *Savings & Profit Sharing Fund of Sears Employees v. Gago* (7th Cir. 1983), 717 F.2d 1038.

The congressional policy underlying the spendthrift provision of ERISA was to " 'safeguard a stream of income for pensioners (and their dependents...), even if that decision prevents others from securing relief for the wrongs done them.' " (*Ablamis v. Roper* (9th Cir. 1991), 937 F.2d 1450, 1454, quoting *Guidry v. Sheet Metal Workers National Pension Fund* (1990), 493 U.S. 365, 376, 107 L. Ed. 2d 782, 795, 110 S. Ct. 680, 687.) The 1984 REA was, in part, enacted to afford better protection for women dependent upon their husbands' earnings, by requiring pension plans to provide automatic survivor benefits. See 29 U.S.C. §1055 (1988); *Ablamis*, 937 F.2d at 1453.

The 1984 REA amended ERISA to allow for the QDRO, but section 1056(d)(1) of title 29 of the United States Code (Code) (29 U.S.C. §1056(d)(1) (1988)) provides: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Section 1056(d)(3)(A) of title 29 of the Code provides:

> "Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." 29 U.S.C. §1056(d)(3)(A) (1988).

Thus, a court may divide spousal rights in a qualified pension plan through the mechanism of a QDRO and award the nonemployee spouse his or her appropriate share of those benefits—but only if the domestic relations order is a "qualified" one as defined in the 1984 REA. *Ablamis*, 937 F.2d at 1454.

In section 401 of title 26 of the Code (26 U.S.C. §401 (1988)), tax provisions are made relating to qualified pension, profit-sharing, and stock-bonus plans. Section 401(a)(13)(A) of title 26 of the Code provides in part:

> "In general.—A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." (26 U.S.C. §401(a)(13)(A) (1988).)

Section 401(a)(13)(B) of title 26 of the Code provides:

"Special rules for domestic relations orders.—Subparagraph (A) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that subparagraph (A) shall not apply if the order is determined to be a qualified domestic relations order." 26 U.S.C. §401(a)(13)(B) (1988).

Section 401(k) trusts (see 26 U.S.C. §401(k) (1988)) are governed by these provisions. The trial court could not, in the Norfleet dissolution proceeding, assign or alienate Jim's 401(k), absent the use of the QDRO.

Sections 1056(d)(3)(B) through (L) of title 29 of the Code provide for the coverage and required terms of a QDRO, as well as requirements of employers, including those relating to qualification challenges of court orders. Sections 1056(d)(3)(C) and (d)(3)(D) of title 29 of the Code provide:

"(C) A domestic relations order meets the requirements of this subparagraph only if such order clearly specifies—

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

(D) A domestic relations order meets the requirements of this subparagraph only if such order—

(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) does not require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order." (29 U.S.C. §§1056(d)(3)(C), (d)(3)(D) (1988).)

The Norfleet final dissolution judgment of February 7, 1992, did not contain a QDRO.

## DIANA'S POSITION

Diana suggests that Illinois decisions have established that a spouse of an employee can obtain a portion of the employee's retirement fund, regardless of the QDRO provisions, citing *In re Marriage of Hunt* (1979), 78 Ill. App. 3d 653, 397 N.E.2d 511, and *In re Marriage of Papeck* (1981), 95 Ill. App. 3d 624, 420 N.E.2d 528. Both these cases preceded the 1984 REA. *Hunt* held the portion of the pension plan resulting from contributions during the marriage to be marital property and should be considered in dividing marital property, pursuant to provisions of section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503). *Hunt* concluded that ERISA did not prevent treating the pension plan and profit-sharing plan as marital property. *Hunt*, 78 Ill. App. 3d at 666, 397 N.E.2d at 521.

The *Hunt* decision stated that where the present value of the pension could be ascertained, the trial court could consider that value and award the pension interest to the employee spouse and give the nonemployee spouse other marital property to offset his or her marital share in the interest. (*Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519.) The *Hunt* decision also stated:

> "In those instances where it is difficult to place a present value on the pension or profit-sharing interest due to uncertainties regarding vesting or maturation, or when the present value can be ascertained but the type, or lack, of other marital property makes it impractical or impossible to award sufficient offsetting marital property to the nonemployee spouse, then the trial court in its discretion may award each spouse an appropriate percentage of the pension to be paid 'if, as and when' the pension becomes payable." *Hunt*, 78 Ill. App. 3d at 663, 397 N.E.2d at 519.

■ It is generally accepted that pension interests earned during a marriage are marital property. While the value of the interest is to be considered in dividing marital assets, a "qualified" retirement plan has been, since the 1984 REA, subject to the QDRO requirements. We emphasize not all retirement plans are "qualified." Jim's 401(k) *was* qualified.

We recognize that case law had, prior to 1984, created exceptions to the "assigned or alienated" provision of ERISA which allowed for support recoveries for children and ex-spouses. Those exceptions have been codified in section 1056(d)(3) of title 29 of the Code by the 1984 REA. While accepting the conditions of a QDRO, Diana then sets

forth the following quote from *Arizona Laborers, Teamsters, & Cement Masons, Local 395 Pension Trust Fund v. Nevarez* (D. Ariz. 1987), 661 F. Supp. 365, 368:

> "This conclusion does not mean that the judgment creditor spouses cannot ever reach their ex-spouses' pension benefits. Nothing precludes them from going back to the Superior Court to seek an order which qualifies as a QDRO."

She now argues she attempted to do what the *Arizona Laborers* decision suggested and that the trial court erred in refusing to enter an order qualifying the plan as a QDRO.

■■ We conclude that the QDRO requirements prohibited the creation of any lien or encumbrance on Jim's 401(k), absent a QDRO. When Jim died, no QDRO existed or had been requested. The dissolution judgment was entered more than 30 days prior to Jim's death.

*Young v. American Standard Life Insurance Co.* (1947), 398 Ill. 565, 76 N.E.2d 501, is cited as authority that upon Jim's death, Joshua, being the designated 401(k) beneficiary, became the owner of the trust, to be free from any claim of the dissolution court or the probate court. *Young* involved a last-minute attempt to change a beneficiary on life insurance policies and states:

> "The rights of a duly appointed beneficiary under a life insurance policy are fixed by the facts existing at the time of the death of the insured and the company can do nothing thereafter to change those rights." *Young*, 398 Ill. at 569, 76 N.E.2d at 503.

We know of no reason, and none has been suggested, why one named as the beneficiary of a 401(k) trust, on the death of the principal, should not be treated the same as a life insurance beneficiary.

Diana's claim that she can seek a QDRO at any time presupposes some type of interest in the 401(k). The Federal QDRO requirement defeats this claim by only allowing encumbrances or assignments to a QDRO. In other words, no QDRO—no interest. Upon Jim's death, all interest in the 401(k) passed to his son.

Affirmed.

McCULLOUGH and COOK, JJ., concur.