WOLF, Judge,
specially concurring.
The majority opinion holds that no order entered prior to January 1, 1985, may be considered a qualified domestic relations order (QDRO) pursuant to the Employer Retirement Income Security Act (ERISA), even if it substantially complies with the present statutory criteria for QDRO. The opinion states that for any order entered prior to January 1, 1985, to be enforceable and not in conflict with ERISA, it must comply with statutory exemptions from ERISA.[1] It is my belief that the statutory exemption requirements must only be resorted to if the order does not substantially comply with the statutory criteria for a QDRO. Any other interpretation is inconsistent with the purposes of ERISA and is unsupported by a substantial portion of existing case law. The order in question substantially complies with the requirements of ERISA and, thus, constitutes a QDRO which may be enforced notwithstanding ERISA. I do agree, however, with Judge Smith that the designation of the beneficiary in the life insurance policy in question was not affected by the final judgment of 1981. I, therefore, concur in reversing the decision of the trial court.
The purposes of ERISA and its relationship with qualified domestic relations orders were explained in the case of In re Marriage of Norfleet, 243 Ill.App.3d 925, 928-29, 184 Ill.Dec. 63, 65, 612 N.E.2d 939, 941 (Ill.App. 4th Dist.1993):
ERISA contains a spendthrift provision providing that “benefits provided under the [retirement] plan may not be assigned or alienated.” (29 U.S.C. § 1056(d)(1) (1988).) However, State court domestic relation orders were considered in some cases as proper exceptions to the limitations of the “may not be assigned or alienated” provision. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry of the United States and Canada Local 198 AFL-CIO Pension Plan v. Myers (M.D.La.1980), 488 F.Supp. 704; Operating Engineers Local No. 428 Pension Trust Fund v. Zamborsky (D.Ariz.1979), 470 F.Supp. 1174, aff'd (9th Cir.1981), 650 F.2d 196; Savings & Profit Sharing Fund of Sears Employees v. Gago (7th Cir.1983), 717 F.2d 1038.
The congressional policy underlying the spendthrift provision of ERISA was to “‘safeguard a stream of income for pensioners (and their dependents ...), even if that decision prevents others from securing relief for the wrongs done them.’ ” (Ablamis v. Roper (9th Cir.1991), 937 F.2d 1450, 1454, quoting Guidry v. Sheet Metal Workers National Pension Fund (1990), 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782, 795). The 1984 REA was, in part, enacted to afford better protection for women dependent upon their husbands’ earnings, by requiring pension plans to provide automatic survivor benefits. See 29 U.S.C. § 1055 (1988); Ablamis, 937 F.2d at 1453.
Congress recognized that the policy reasons for protections provided to the present spouse against claims of third parties were not equally applicable to valid claims by former spouses pursuant to a court order:
The purpose of the proscription on alienation and assignment is to protect an employee from his own financial improvidence in dealing with third parties. The provision is not intended to alter traditional support obligations but rather to assume that the employee and his beneficiaries reap the ultimate benefits due upon retirement.
Stackhouse v. Russell, 447 N.W.2d 124, 125 (Iowa 1989), citing AT. & T. v. Merry, 592 F.2d 118, 124 (2d Cir.1979).
Rather than exempt all domestic relations orders, however, Congress wished to protect plan administrators from undue administrative burdens and, thus, required that state court orders provide the necessary information to determine the identity and interest of *1187 the court-ordered beneficiary. Carland v. Metropolitan Life Insurance Co., 935 F.2d 1114, 1119 (10th Cir.1991), cert. denied, Metropolitan Life Ins. Co. v. Carland, — U.S. -, 112 S.Ct. 670, 116 L.Ed.2d 761 (1991).
According to section 1056(d), a court order relating to spousal property rights is a QDRO if it “creates or recognizes the existence of an alternate payee’s right to ... receive all or a portion of the benefits payable” under a plan. Id. § 1056(d)(3)(B)(i)(I). To qualify under the statute, a court order must include: (1) the name of the participant and the name and mailing address of an alternate payee covered by the court order, (2) the amount or percentage of benefits payable to an alternate payee or a manner of determining the amount or percentage, (3) the number of payments or period affected by the order, and (4) the plan to which the order applies. Id. § 1056(d)(3)(B)(i)(II), (d)(3)(C). The statute also includes three general prohibitions for a QDRO. The order may not require a plan to provide: (1) any type of benefit or option not provided under the plan, (2) increased benefits, or (3) payment of benefits to an alternate payee required to be paid to another alternate payee under a previous QDRO. Id. § 1056(d)(3)(B)(i)(II), (d)(3)(D).
The trial court found that the order in this case was a QDRO. Upon review, I cannot disagree with the determination that the order in question substantially complied with ERISA. The order provides sufficient notice to the plan administrator as well as constituting a valid support obligation from a previous marriage. Under these circumstances, an order entered prior to 1984 would be enforceable without determining whether it was exempt pursuant to the statute. Stinner v. Stinner, 520 Pa. 374, 554 A.2d 45 (Pa.1989), cert. denied, 492 U.S. 919,109 S.Ct. 3245, 106 L.Ed.2d 591 (1989); Carland, supra. In fact, a number of courts have held that domestic relations orders issued prior to 1984 were not subject to ERISA in light of the fact that the spendthrift clause of ERISA did not intend to preclude legitimate support obligations.[2]
I would, therefore, find that ERISA did not preempt enforcement of the domestic relations order, but reverse the decision of the trial court concerning the applicability of that order to the insurance policy in question.

. For orders entered prior to January 1, 1985, to be exempt from ERISA, (1) benefits must begin being paid prior to January 1, 1985, or (2) the plan administrator must choose to treat the order as QDRO.

. The North Carolina Court of Appeals recently had occasion to address this issue. See Evans v. Evans, 111 N.C.App. 792, 434 S.E.2d 856 (1993). That court noted that there was an implied exception followed by the majority of jurisdictions prior to the time Congress passed the 1984 amendment to ERISA, also known as the Retirement Equity Act, or REACT, which specifically codified an exception for certain QDROs. The court stated that "[t]he House Education and Labor Committee’s intent was to remove the confusion then existing in this area and to remove ERISA as a barrier to recovery of alimony, child support and property settlements under certain conditions.” Id., 434 S.E.2d at 859-60. The court in Norfleet, supra, noted state court domestic relation orders were considered in some cases as proper exceptions to the limitations of ERISA. Norfleet, 243 Ill.App.3d at 928, 184 Ill.Dec. 63, 612 N.E.2d 939. In Stone v. Stone, 450 F.Supp. 919 (N.D.Cal.1978), affirmed, 632 F.2d 740 (9th Cir.Cal.1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981), the wife was awarded an interest in her husband's vested retirement benefits under a plan subject to ERISA when the parties divorced. The court found that ERISA did not prevent the award of an interest to the wife. The court noted that domestic relations are in the province of state law, and it did not find federal preemption because that was not the clear purpose of Congress. See also Employee Savings Plan of Mobil Oil Corp. v. Geer, 535 F.Supp. 1052 (S.D.N.Y.1982). In Alexander v. Alexander, 784 S.W.2d 112 (Tex.App.1990), the court found that ERISA, prior to REACT, did not preempt state court properly divisions. Alexander at 113. The reasoning of these courts appears to be that since the state and federal courts have concurrent jurisdiction pver the action, that even without REACT, the trial court has jurisdiction to make property divisions. See also General Dynamics Corp. v. Harris, 581 S.W.2d 300 (Tex.Civ.App. 10th Dist.1979) (wife's claim based on divorce decree not preempted by ERISA even though regulation administration of the retirement plan fell within ERISA since state and federal courts have concurrent jurisdiction over the action pursuant to section 1132(a)(1).