NANCY ROBSON, f/k/a Nancy O'Leary, Plaintiff-Appellee, v. ELECTRICAL CONTRACTORS ASSOCIATION LOCAL 134 IBEW JOINT PENSION TRUST OF CHICAGO *et al.*, Defendants-Appellees (Estate of William P. O'Leary, Defendant-Appellant).

First District (3rd Division)   No. 1—98—1741

Opinion filed November 17, 1999.—Rehearing denied April 4, 2000.—Modified opinion filed April 12, 2000.

Overgaard & Davis, of Chicago (R. Heath Davis, of counsel), for appellant.

Braun & Edwards, Chartered, of Flossmoor (Paul S. Braun and Martin Q. Ryan, of counsel), for appellee.

JUSTICE BURKE delivered the opinion of the court:

The administrator of the estate of William O'Leary (the Estate) appeals from an order of the circuit court granting the motion of plaintiff Nancy Robson, f/k/a Nancy O'Leary (Nancy), for summary judgment and denying the Estate's motion for summary judgment and for reconsideration in a declaratory judgment action brought by Nancy, who sought a declaration pursuant to section 2—701 of the Illinois Code of Civil Procedure (735 ILCS 5/2—701 (West 1996)) that her interest as designated beneficiary in the death benefits under the pension trust of her former husband, William O'Leary (William), had not been terminated upon her divorce from William. On appeal, the Estate contends that (1) pension trust benefits are considered property in the State of Illinois and, therefore, the trial court erred in finding that Nancy had not terminated her right to William's pension trust in the divorce proceeding between the parties notwithstanding the fact that

Nancy had remained the designated beneficiary after her divorce from William; (2) the trial court erred in striking affidavits submitted by the Estate that allegedly evidenced William's intent that Nancy receive no more of his property than she had through the parties' divorce; and (3) the trial court erred in failing to do equity to the Estate, and thereby to William's children, by finding that Nancy, as designated beneficiary, was the rightful owner of the death benefits payable under William's pension trust. For the reasons set forth below, we reverse and remand for further proceedings.

Nancy and William were married on October 22, 1977. William was the owner of interests under a pension trust, pension plan No. 2 (Plan 2) and No. 5 (Plan 5), held by the Electrical Contractors Association Local 113 and Local 134, I.B.E.W. Joint Pension Trust of Chicago, Illinois, and administered by the Electrical Insurance Trustees (defendant trustees). On February 8, 1982, William executed a "Change of Beneficiary" form designating Nancy, his then wife, as his beneficiary under his pension trust in the event of his death. This form is included in the record, but it makes no reference to either Plan 2 or Plan 5. On November 15, 1982, William executed a "Designation of Beneficiary" form, once again naming Nancy, his then wife, as his beneficiary under Plan 5 in the event of his death.

On October 6, 1992, the trial court granted Nancy's petition for a dissolution of marriage. The dissolution judgment, prepared by Nancy's counsel and entered by the court, provides, *inter alia*, that Nancy is to resume her former surname Robson. The dissolution judgment also contains provisions awarding to Nancy and William enumerated items of personal and real property. Among these provisions are two paragraphs that divide and award the pension plans held by Nancy and William, respectively. Paragraph F provides that Nancy is awarded 100% of the interest she holds in any retirement funds with her employer. Paragraph G divides the marital portion of William's pension trust equally between Nancy and William. This paragraph specifies:

> "G. [William's] pension with the Electrical Contractors Association Local 113 and Local 134 Pension Plan numbers 2 & 5 shall be divided equally between the parties with regard to the marital portion of [William's] pension."

The dissolution judgment does not provide Nancy with a right of survivorship in William's pension trust. The dissolution judgment does contain a provision, found at paragraph K, that terminates the present and future rights and claims that either Nancy or William may have against the marital property of the other or his or her estate. Specifically, this paragraph provides:

"K. Each of the parties' rights and claims with regard to dower, homestead and all other property rights and claims which they may have or hereafter have, as husband, wife, widower, widow, or otherwise, by reason of the marital relationship now existing between the parties hereto under any present or future law of any state or the United States of America *** in and to, or against the property of the other or his or her estate, whether now owned or hereafter acquired by such other party is hereby terminated."

In addition to dividing up the property between Nancy and William and terminating the rights and claims of Nancy and William to the divided property, the dissolution judgment directs, in paragraph G, that a qualified domestic relations order (QDRO) be entered to effectuate the division of the marital portion of Plan 2 and Plan 5 of William's pension trust. On June 1, 1995, the trial court entered a QDRO pursuant to, and within the meaning of, the Retirement Equity Act of 1984 (Pub. L. No. 98—397, 98 Stat. 1426 (1984)). The QDRO, which was drafted by Nancy's counsel, incorporates the provisions contained in the dissolution judgment and establishes Nancy's one-half interest in the marital portion of Plan 2 and Plan 5. The QDRO provides, *inter alia*:

"G. The Plan Administrator of PLAN NO. 2 shall direct the Trustee or Trustees of PLAN NO. 2 to allocate Fifty Percent (50%) of the marital portion of the benefit of [William] in PLAN NO. 2 to [Nancy].

\* \* \*

J. The Plan Administrator of PLAN NO. 5 shall direct the Trustee or Trustees of PLAN NO. 5 to allocate Fifty Percent (50%) of the marital portion of the assets held for the benefit of [William] in PLAN NO. 5 to a separate account in the name of [Nancy].

\* \* \*

M. Nothing in this Order requires, and no one shall construe this Order to require:

\* \* \*

2. PLAN NO. 2 and PLAN NO. 5 to provide increased benefits ***."

The QDRO, like the dissolution judgment, does not include language entitling Nancy to a right of survivorship in William's pension trust. Pursuant to the QDRO's directives, the defendant trustees allocated $17,194.05 to a separate trust account in Nancy's name and retained the remaining benefits in trust for William.

On November 27, 1996, William died, having failed to change his designated beneficiary under his pension trust and, thus, Nancy remained as William's sole beneficiary. A $10,000 death benefit became payable under a plan about which the record is unclear, and $37,914.97

worth of death benefits became payable under Plan 5. A dispute arose as to who, between Nancy and William's estate, was entitled to the death benefits payable under William's pension trust. Upon the Estate's petition, a citation was issued by the trial court on December 27, 1996, that enjoined the defendant trustees from transferring "any property belonging to [William] and/or his Estate," including all death benefits payable under William's interests in Plan 2 and Plan 5. The appellate record indicates that Nancy had not appeared on the citation's return date and, consequently, the court entered an *ex parte* turnover order against the defendant trustees. After Nancy appeared in a subsequent citation proceeding, the court vacated its turnover order. The citation's injunctive provisions directed towards the defendant trustees, however, remained viable and continued in effect.

On June 22, 1997, Nancy filed a complaint for declaratory judgment, seeking to be declared the lawful owner of the benefits payable under Plan 5 due to her status as the designated beneficiary. In its answer, the Estate asked the court to declare it the rightful beneficiary to William's pension trust benefits retained in his name because (1) Nancy had, pursuant to the dissolution judgment, specifically waived her present and future "rights and claims" to or against the property of William or his estate and (2) the remaining pension trust benefits held by the defendant trustees in trust for William pursuant to the QDRO were to be administered and construed as if Nancy had died upon the entry of the dissolution judgment. The Estate further asked the court to direct the defendant trustees to turn over and tender to it all benefits presently held by the defendant trustees in William's name as well as all benefits incorrectly paid out to Nancy.

The defendant trustees asked to be relieved from litigating the matter, claiming that they were acting only as a stakeholder in the controversy and that they had withheld payment to either Nancy or the Estate. In the wake of the conflicting claims to the pension trust benefits, the defendant trustees sought a court order permitting them to deposit with the court the total account balance in William's pension trust. The appellate record is inconclusive as to whether or not the court granted the relief sought by the defendant trustees.

On May 28, 1997, the defendant trustees paid Nancy $10,000, an amount that represented a "Death Benefit payable to Nancy O'Leary, the designated beneficiary." The appellate court record, however, does not indicate whether the $10,000 death benefit was derivative of the pension trust benefits payable under either Plan 2 or Plan 5.

Subsequently, the Estate filed a motion for summary judgment, alleging that the pension benefits held in trust for William pursuant to the QDRO's provisions should have been administered and construed

as if Nancy had died upon entry of the dissolution judgment. The Estate also alleged that the defendant trustees had paid Nancy the sum of $10,000 in violation of the injunctive provisions contained in the citation issued on December 27, 1996. The Estate asked the court to declare that (1) all benefits held by the defendant trustees for William's benefit be paid to it and (2) any benefits paid by the defendant trustees to Nancy be due and owing from the defendant trustees and/or Nancy to it. Nancy filed a cross-motion for summary judgment, alleging that the dissolution judgment had not terminated her right to receive, as designated beneficiary, the pension trust benefits payable under Plan 5. Nancy also moved to strike the affidavits filed by the Estate in support of its motion for summary judgment that purported to evidence William's intent that Nancy not benefit from his death to the exclusion of his children. The defendant trustees did not respond to the allegations contained in either the Estate's or Nancy's motions for summary judgment.

The trial court granted Nancy's motion for summary judgment and denied the Estate's motion for summary judgment. The court found that the dissolution judgment and QDRO had not effectuated "a sufficiently clear surrender of [Nancy's] interest [in William's] life insurance death benefit from [the defendant trustees] and [William's] death benefit in Pension Plan No. 5," and the court declared Nancy "the lawful owner/beneficiary of the life insurance and Pension Plan #5 benefits." The court also denied the Estate's motion to reconsider and, in a separate order, granted Nancy's motion to strike the affidavits filed by the Estate. This appeal followed.

The Estate first contends that the trial court erred in finding that the dissolution judgment had not terminated the rights or claims of Nancy, the designated beneficiary, to William's pension trust. The Estate argues that William died the owner of property, his pension trust benefits, and that the dissolution judgment specifically dealt with this property and terminated Nancy's rights and claims in this property. The Estate alternatively argues that any "expectancy interest" Nancy may have had in William's pension trust had been terminated by application of section 1(a) of the Trusts and Dissolutions of Marriage Act (760 ILCS 35/1(a) (West 1996)).

In response, Nancy argues that the trial court properly granted summary judgment in her favor because she is entitled to receive the pension trust benefits as a matter of law. Nancy argues that she, as designated beneficiary, had an "expectancy interest" in William's pension trust benefits because William retained the right to change his designee of those benefits and her alleged expectancy interest became vested at William's death due to her continuing status as his designated beneficiary.

■ A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits establish that no genuine issue as to any material fact exists and that the moving party is entitled to a judgment as a matter of law. See 735 ILCS 5/2—1005 (West 1996); *Anglin v. Oros*, 257 Ill. App. 3d 213, 216, 628 N.E.2d 873 (1994). When parties file cross-motions for summary judgment, they agree that no material issue of fact exists and that only a question of law is involved. See *Andrews v. Cramer*, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133 (1993). In such a case, as here, the standard of appellate review is *de novo*. See *Andrews*, 256 Ill. App. 3d at 769.

■ Pension trust benefits earned by an employee spouse while married are "property" acquired during the marriage within the meaning of section 503 of the Dissolution Act (750 ILCS 5/503 (West 1996)) and are, thus, marital property subject to division between the spouses upon dissolution of their marriage. See *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 460-61, 629 N.E.2d 1216 (1994); *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31, 38, 495 N.E.2d 659 (1986). Under provisions of the Employee Retirement Income Security Act of 1974 (ERISA) (88 Stat. 832, as amended, 29 U.S.C. § 1001 *et seq.* (1994)), a method for dividing assets in a pension trust between the employee spouse and the nonemployee spouse pursuant to a dissolution of marriage is through the mechanism of a qualified domestic relations order (QDRO) approved by the court. See 29 U.S.C. § 1056(d)(3)(B) (1994); see generally *In re Marriage of Norfleet*, 243 Ill. App. 3d 925, 928-30, 612 N.E.2d 939 (1993). Pursuant to section 1132(e)(1) of ERISA, state and federal courts have concurrent subject matter jurisdiction to construe the ERISA provisions relating to a QDRO (29 U.S.C. § 1132(e)(1) (1994)); see also *In re Marriage of Oddino*, 16 Cal. 4th 67, 73-82, 939 P.2d 1266, 1269-75, 65 Cal. Rptr. 2d 566, 569-75 (1997); *Board of Trustees of the Laborers Pension Trust Fund for Northern California v. Levingston*, 816 F. Supp. 1496, 1499-1501 (N.D. Cal. 1993)), and a court's role is to enforce the statute as enacted (see *In re Marriage of Hannon*, 207 Ill. App. 3d 329, 334, 565 N.E.2d 1016 (1991).

■ A QDRO is exempt from both the pension plan "anti-alienation" provision (29 U.S.C. § 1056(d)(3)(A) (1994)) and ERISA's general preemption clause (29 U.S.C. § 1144(b)(7) (1994)). According to section 1056(d) of ERISA, a court order relating to spousal property rights in an employee spouse's pension is a QDRO if it creates or recognizes an alternate payee's right to receive all or a portion of the benefits payable with respect to a participant under a plan. 29 U.S.C. § 1056

(d)(3)(B)(i)(I) (1994).[1] In creating the QDRO mechanism, Congress was careful to provide that the alternate payee, or the "spouse, former spouse, child, or other dependent of a participant," is to be considered a plan beneficiary. 29 U.S.C. §§ 1056(d)(3)(K), (d)(3)(J) (1994).

A QDRO must be drafted to include very specific information with explicit instructions to the plan administrator. See 29 U.S.C. §§ 1056(d)(3)(C) through (d)(3)(E) (1994).[2] Under section 1056(d)(3)(F) of ERISA, a QDRO may specify that a former spouse shall receive survivorship benefits. 29 U.S.C. § 1056(d)(3)(F) (1994). Section 1056(d)(3)(F) states in pertinent part:

> "To the extent provided in any qualified domestic relations order *** the former spouse of a participant shall be treated as a surviving spouse of such participant for purposes of [determining her survivorship benefits]." 29 U.S.C. § 1056(d)(3)(F) (1994).

If the QDRO fails to specify that an alternate payee, or the former spouse, has a right of survivorship, the alternate payee or former spouse will not be entitled to that benefit. See, *e.g.*, *Glenn v. Schlerf*, No. 97,1993, slip op. at 2-3 (Del. September 20, 1993); see generally *Tarbert v. Tarbert*, No. 96—CA—0036, slip op. at 2 (Ohio App. September 27, 1996).

■ Applying these principles in the case at bar, we conclude that Nancy is not entitled to any survivorship rights in the 50% of William's pension benefits held in trust for him by the defendant trustees. The QDRO drafted by Nancy and approved by the trial court directs the defendant trustees "to allocate *** Fifty Percent (50%) of the marital portion of the benefit of [William] in PLAN NO. 2 to [Nancy] *** and *** Fifty Percent (50%) of the marital portion of the assets held for the benefit of [William] in PLAN NO. 5 to a separate account in the name of [Nancy]." This language effectuates the 50% division of William's pension trust mandated by the dissolution judgment and entitles Nancy, as the alternate payee and the beneficiary, to only 50% of William's pension trust. Notably absent from the QDRO's language is any expression purporting to award Nancy survivorship

---

[1]The same provisions relating to a QDRO that appear in ERISA may be found in the Internal Revenue Code of 1986 (26 U.S.C. § 414 *et seq.* (1988)).

[2]The order must specify: (1) the name and last known mailing address of the participant and each alternate payee covered by the order; (2) the amount or percentage of the participant's benefit to be paid by the plan or the manner in which such amount or percentage is to be determined; (3) the number of payments or the period to which the order applies; and (4) each plan to which the order applies. 29 U.S.C. §§ 1056(d)(3)(C) through (d)(3)(E) (1994); see generally *In re Marriage of Johnston*, 206 Ill. App. 3d 262, 266-68, 562 N.E.2d 1004 (1990) (Rizzi, J., specially concurring) (discussing, in pertinent part, the requirements for a QDRO).

rights in the 50% not awarded to her. Accordingly, we hold that, as a matter of law, Nancy cannot be treated as a surviving spouse entitled to the death benefits under William's pension trust in the absence of a survivorship clause. To conclude otherwise would be to grant Nancy "increased benefits," a grant that would contravene the express language contained in paragraph M of the QDRO which prohibits a construction of the QDRO to require either Plan 2 or Plan 5 "to provide increased benefits." In summary, we conclude that the court-approved QDRO overrode the beneficiary designation by facilitating the divestiture of Nancy's rights, survivorship or otherwise, in William's pension trust. See generally *Metropolitan Life Insurance Co. v. Wheaton*, 42 F.3d 1080, 1083 (7th Cir. 1994) (stating that a QDRO "can override the designation of beneficiary in a pension plan, as Congress in the Retirement Equity Act decided that it can").

Our interpretation of the QDRO is supported by the language of the divorce judgment upon which the QDRO is based. William's pension, accumulated through William's employment and specifically delineated in the dissolution judgment, was marital property to be equally divided between Nancy and William. The dissolution judgment effectuates this division by referring to William's pension trust in paragraph G by name and number and specifying an equal division of the marital portion of Plan 2 and Plan 5 between Nancy and William. William, thus, became the owner of 50% of the pension trust benefits payable under Plan 2 and Plan 5, and these benefits became his property within the meaning of the dissolution judgment and within the meaning of Illinois statutory and case law. Like the language contained in the QDRO, the dissolution judgment does not contain either an express or implied grant of survivorship rights to Nancy in the 50% portion of either Plan 2 or Plan 5 not allocated to her. Nancy was merely awarded a reciprocal 50% of the benefits payable under Plan 2 and Plan 5, and she became the beneficiary of only the 50% apportioned to her.

Second, in straightforward, express terms, the dissolution judgment terminated "all property rights and claims which [William and Nancy] may have or hereafter have, as husband, wife, widower, widow, or otherwise, by reason of the marital relationship *** in or to or against the property of the other or his or her estate *** now owned *** by such other party." As stated above, the dissolution judgment enumerated the pension trust as a property asset divisible between Nancy and William. The subsequent waiver provision, although not specifically mentioning the pension trust, does specifically reference the *property* owned by each party. We note that when a dissolution judgment is drafted by the wife's counsel and the husband is

unrepresented, as here, the terms of the dissolution judgment are to be construed most strictly against the wife. See *Carvallo v. Carvallo*, 62 Ill. App. 3d 394, 399, 378 N.E.2d 1288 (1978). In construing the terms of the waiver provision most strictly against Nancy, we find that they constitute a specific termination of Nancy's rights and claims, survivorship or otherwise, in the remaining one-half portion of William's pension trust. See *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill. App. 3d 995, 997, 299 N.E.2d 392 (1973) (holding that a divorce decree does not affect the pension rights of a person who has been designated as a beneficiary unless it specifically includes a termination of those rights); see *e.g., Fox Valley & Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275, 280-82 (7th Cir. 1990) (adopting Illinois state law through federal common law and determining that a provision in a divorce decree had divested the wife of her rights to the pension fund benefits in question because the provision specifically dealt with those benefits, including the death benefit at issue in the case); compare *Estate of Altobelli v. International Business Machines Corp.*, 77 F.3d 78, 80 (4th Cir. 1996) (a waiver provision enumerating the divisible "property," which included the former husband's pension benefits, was specific enough to constitute a waiver of the ex-wife's rights to those benefits), to *Trustees of Iron Workers Local 451 Annuity Fund v. O'Brien*, 937 F. Supp. 346 (D. Del. 1996) (a waiver provision limited to claims relating to support and maintenance and to claims in any divorce proceedings but not mentioning the pension benefits in dispute was too general to constitute a waiver of the ex-wife's rights to those benefits).

We briefly note that the cases cited by Nancy are not in conflict with this court's holding and arguably support the conclusion we have reached. See *In re Marriage of Myers*, 257 Ill. App. 3d 560, 628 N.E.2d 1088 (1993); *Leahy v. Schuett*, 211 Ill. App. 3d 394, 570 N.E.2d 407 (1991); *Williams v. Gatling*, 186 Ill. App. 3d 21, 542 N.E.2d 121 (1989); *O'Toole*, 12 Ill. App. 3d 995; see also *Walden v. Walden*, 686 So. 2d 345 (Ala. Civ. App. 1996). None of these cases involve a factual situation presented in the case at bar where the contested benefits are explicitly referenced and dealt with in the dissolution judgment and are decreed split between the husband and wife; where the entry of a QDRO effectuates the decreed split and apportions to the wife her marital share of the husband's benefits; where the trustee actually divides the husband's benefits to comply with the QDRO, setting aside in trust for the wife her marital portion of the husband's benefits and retains in trust for the husband's benefit the remaining benefits; and where both the QDRO and the dissolution judgment are silent as to survivorship rights in the portion of the benefits not allocated to the wife.

■ Having found that the QDRO and the dissolution judgment terminated any survivorship interests of Nancy in the portion of William's pension trust allocated to him, we next address the Estate's contention that the trial court erred in "gloss[ing] over [an] obvious violation of a court issued citation proceeding." The Estate argues that the defendant trustees violated the injunctive provisions contained in the citation when they distributed to Nancy $10,000 in death benefits. The Estate suggests that either Nancy ought to return to the defendant trustees the distributed $10,000 or the defendant trustees should be required to pay those benefits to the Estate.

According to the record, the Estate petitioned the court for permission to have a citation issued against the defendant trustees, which request was granted on December 27, 1996. This citation prohibited the defendant trustees from transferring any property potentially belonging to the Estate. On May 28, 1997, however, the defendant trustees distributed to Nancy the sum of $10,000. Although the defendant trustees answered Nancy's complaint for declaratory judgment, they did not respond to the Estate's allegations made in its answer and in its motion for summary judgment that the $10,000 sum was, like the remaining benefits in William's pension trust, the property of William to which Nancy was not entitled. In the absence of any pleading from the defendant trustees, it is not clear whether the $10,000 was derivative of either Plan 2 or Plan 5. Any discussion of this issue, without adequate briefing or expert testimony, if needed, would only illustrate our inability to resolve the issue on the record before us. We, accordingly, remand this cause for an evidentiary hearing to determine whether or not the $10,000 sum paid to Nancy was derivative of either Plan 2 or Plan 5, with due consideration given to our interpretation of the QDRO. In light of our disposition of these issues, the Estate's further arguments and contentions are moot.

For the reasons stated, we reverse the order of the circuit court granting summary judgment in favor of Nancy and against the Estate, and we remand this cause for entry of summary judgment in favor of the Estate and against Nancy and for an evidentiary hearing consistent with this order.

Reversed and remanded.

CAHILL, P.J., and WOLFSON, J., concur.