**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220026-U

Order filed October 20, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| PHYLLIS BONZANI, n/k/a PHYLLIS | ) | Will County, Illinois, |
| SPORLEIN, | ) | |
| | ) | |
| Petitioner-Appellee, | ) | Appeal No. 3-22-0026 |
| | ) | Circuit No. 10-D-1062 |
| and | ) | |
| | ) | |
| ROBERT ANTHONY BONZANI, | ) | Honorable |
| | ) | Dinah Archambeault, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Peterson and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:  (1) The trial court's calculation of prepetition arrears improperly considered postpetition liabilities and failed to consider partial satisfaction of prepetition arrears. (2) Contemnor's appeal of lump-sum payment purge provision was mooted by his satisfaction of the purge. (3) The court properly granted leave to file section 508(b) fee petition; however, the petition may not include fees incurred for matters extraneous to the prepetition court order. Affirmed in part and vacated in part; cause remanded for recalculation of arrears.

¶ 2        Phyllis Bonzani, n/k/a Phyllis Sporlein, filed postdissolution petitions seeking to enforce

domestic support obligations against her ex-husband, Robert Bonzani. The trial court found Robert

in indirect civil contempt and entered an arrearage judgment against him. Phyllis petitioned for attorney fees before a purge was set. Two days later, Robert filed for bankruptcy and listed the requested attorney fees as an incurred debt. During bankruptcy, Robert's shares of two medical practices—in which Phyllis held a one-half equitable interest—were liquidated. Phyllis filed three proofs of claim in the bankruptcy action: one for the arrearage judgment and two for her equitable interests in the medical practices. She later stipulated to treating the arrearage judgment as a priority claim and the liquidated interests as general claims.

¶ 3        Phyllis received a bankruptcy estate disbursement satisfying 100% of her arrearage judgment claim and approximately 27% of her liquidated interest claims. After the bankruptcy proceeding ended, the trial court set an updated arrearage amount, ordered a lump-sum purge payment, and allowed Phyllis to petition for fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/508(b) (West 2020)). Robert appeals from this order. For the reasons that follow, we affirm in part, vacate in part, and remand with directions.

¶ 4                                    I. BACKGROUND

¶ 5        The parties were married in 1993 and had two children. In 2012, the trial court entered a dissolution judgment incorporating a marital settlement agreement (MSA) and a joint parenting judgment. The MSA required Robert, a urologist, to pay unallocated support to equalize the parties' base income. It awarded Phyllis a one-half equitable ownership interest in Robert's shares of Tinley Woods Surgery Center (Tinley Woods) and United Urology Centers, LLC (United Urology). It further provided that, for both medical practices, Robert "shall retain his interest *** and shall be construed as trustee, holding Wife's one-half (1/2) for her benefit in trust, *** and shall not transfer, encumber, or otherwise hypothecate Wife's equitable interest without her express written approval or order of Court."

2

¶ 6                              A. Modification of Dissolution Judgment

¶ 7        The parties persisted in litigation following the dissolution judgment's entry. In June 2014, the judgment was modified by an agreed order requiring Robert to (1) pay $3000 per month in child support and $3000 per month in maintenance, (2) pay $1000 per month toward a $25,000 judgment in favor of Phyllis, (3) pay off or transfer certain credit cards held in Phyllis's name, (4) provide proof of life insurance, (5) remit half of all dividends received from certain business entities, and (6) remit half of all gross income received from *locum tenens* work.

¶ 8                              B. Petitions for Rule to Show Cause

¶ 9        In late 2015, Phyllis filed two multicount petitions for rule to show cause and for indirect civil contempt. The court set the petitions for an April 2016 evidentiary hearing. Both parties testified at the hearing, and the court took the matter under advisement.

¶ 10                             C. Motion for Bond Turnover

¶ 11       On May 11, 2016, Robert pled guilty in a criminal case and was placed on 24 months' conditional discharge. Two days later, Phyllis filed a motion informing the court that Robert had posted a $10,000 bond in that case. She asked that the balance of Robert's bond (after payment of court costs, fees, and restitution) be turned over to Phyllis in partial satisfaction of Robert's support arrears.

¶ 12                             D. May 2016 Order

¶ 13       On May 18, 2016, the trial court found Robert in indirect civil contempt on several counts of Phyllis's petitions. Those counts alleged that Robert failed to pay child support, maintenance, extracurricular expenses, and uncovered medical expenses, and failed to provide proof of life insurance, use dividends to satisfy arrears, and pay off or transfer credit cards in Phyllis's name. The court sentenced Robert to an indeterminate jail term subject to purge, stayed the mittimus

3

pending setting of purge, and ordered Robert to submit a completed financial disclosure and suggested payment plan as a partial purge. The court set the matter for July 20, 2016, to determine the arrears, set the purge, and enter final judgment. It granted Phyllis leave to file a section 508(b) fee petition subsequent to its determination of the arrearage amount and purge. Finally, the court took the turnover motion under advisement and instructed the court clerk to hold Robert's bond until further order of court.

¶ 14                            E. Financial Disclosure and Motion to Withdraw

¶ 15        In June 2016, Robert's attorney moved to withdraw, citing Robert's inability to pay legal fees. On July 18, 2016, Robert submitted a financial affidavit, which disclosed his employer as B&S Painting[1] and his total monthly net income as $1323.

¶ 16                            F. July 2016 Hearing and Order

¶ 17        During the July 20, 2016, hearing, Phyllis's counsel maintained that Robert's arrears through the hearing date totaled $74,534.82:

> "Accordingly, Judge, *** my computation as provided in my letter would be correct. And as you will note, I gave you the computation on the interest, 616 per day, we recomputed the amount due as of today to be 74,534.82."

Robert's counsel did not provide his own computation and reminded the court of his pending withdrawal motion.

¶ 18        The court entered judgment against Robert in the amount of $74,534.82 and ordered that the balance of Robert's bond be turned over to Phyllis. It also granted Phyllis leave to file a section 508(b) fee petition and continued the matter for setting of a purge payment. Finally, the court

---

[1] In May 2016, Robert's medical license was suspended for three months.

4

partially granted the withdrawal motion, allowing counsel to withdraw on all matters except for those related to the petitions for rule to show cause.

¶ 19                                  G. Fee Petition and Bankruptcy Filing

¶ 20        On August 22, 2016, Phyllis filed an "emergency" section 508(b) petition requesting $66,023.39 in attorney fees for all counts listed in her petitions for rule to show cause. On August 25, 2016, Robert filed for Chapter 7 bankruptcy. 11 U.S.C 701 *et seq.* (2016). His bankruptcy petition listed Phyllis's counsel as a creditor with a right to an incurred debt of $66,023.39. Action on the May and July 2016 orders was stayed during the pendency of the bankruptcy proceeding.

¶ 21                                        H. Bankruptcy Action

¶ 22        In February 2017, Phyllis filed three proofs of claim against Robert in bankruptcy court. Anticipating the imminent sale of Robert's interests in Tinley Woods and United Urology, Phyllis listed a debt of (1) $15,000 for her 50% equitable interest in Robert's share of Tinley Woods (Claim No. 1) and (2) an unspecified amount for her 50% equitable interest in Robert's share of United Urology (Claim No. 2). Robert's share of United Urology was subsequently sold for $108,436. Phyllis's third proof of claim listed a $74,534.82 debt, the arrearage judgment set by the July 2016 order (Claim No. 3).

¶ 23        On March 2, 2018, Phyllis entered into a stipulation that Claim No. 1 ($15,000) and Claim No. 2 ($54,218) would be treated as general unsecured claims, while Claim No. 3 ($74,534.82) would be treated as a priority claim. The stipulation further provided that it was "entered into without prejudice to [Phyllis's] rights to pursue any and all non-dischargeable claims she may have in the dissolution of marriage post-decree proceedings." (Meanwhile, in the trial court, Phyllis moved to withdraw her attorney fee petition without prejudice. The trial court granted her motion on April 2, 2018.)

¶ 24      In June 2018, the trustee submitted a final account and distribution report. The report provided that, on April 16, 2018, the bankruptcy estate remitted $93,385.77 to Phyllis in three distinct disbursements: (1) $74,534.82, representing 100% of Claim No. 3, (2) $4,085.13, representing 27.23% of Claim No. 1, and (3) $14,765.82, representing 27.23% of Claim No. 2. The trustee did not remit any payment in relation to Robert's claimed debt of $66,023.39, the amount of attorney fees sought in the since-withdrawn section 508(b) petition.

¶ 25      I. Petition to Determine Nondischargeability

¶ 26      In October 2018, Phyllis submitted a petition in the trial court to determine nondischargeability of debt under subsections 523(a)(5) and (a)(15) of the United States Bankruptcy Code (Code). 11 U.S.C. § 523(a)(5), (15) (2016). In his response to the petition, Robert did not address subsection (a)(15)'s basis for nondischargeability and relied on case law citing an older version of the Code. In February 2019, the trial court heard arguments on the petition, and Robert's counsel ultimately conceded the nondischargeability of Robert's support and property settlement obligations. He stated, however, referring to the $74,534.82 judgment, "There is no debt to determine non-dischargeable, Judge. It's been satisfied. I don't understand why [opposing counsel is] pursuing something that's already been satisfied."

¶ 27      Phyllis subsequently moved to sanction Robert's counsel for citing outdated case law in his response. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). In November 2019, the trial court imposed a $1500 sanction on Robert's counsel.

¶ 28      J. January 2022 Hearing

¶ 29      On January 3, 2022, the trial court held a hearing to resolve, primarily, the May 2016 and July 2016 orders (which had found Robert in contempt of court, entered an arrearage judgment against him for $74,534.82, and continued for setting of a purge payment). At the start of the

6

hearing, the court and both parties' counsel conferred privately in chambers. Phyllis's counsel summarized the in-chambers conference as follows:

"So we conducted an extensive pretrial and so I can put some of the things on the record.

We discussed the fact of how much the judgments were, how much the bankruptcy claims were, and how much was received from bankruptcy.

So we have, I think, these following numbers are stipulated to or at least not disagreed to.

The original judgment that you entered as a result of the previous finding in contempt back July 20th *** '16, was for 74,534.82.

The claims from bankruptcy add additional sums for the sale of business interest, one for 15,000 and one for 54,218, for a total due of 143,752.82.

That payment was not received. The bankruptcy payment that I made reference to was received in '18, 4-27-18, received at our office and that amount was $93,385.77.

I have computed the interest on the amount due pursuant to your previous finding and applied the interest to it. I think we have an agreement as to what the interest was accrued, total amount of interest accrued, which would indicate that the $143,752.82 with interest accrued was $155,518.19. At the time we received the bankruptcy payment, taking the bankruptcy payment away, left a balance of $62,132.42.

* * *

7

So then I took the 9 percent interest on the balance due of 62,132.49, which would be $5,591.93 per year of interest. So we have from the dates of the – the dates that are indicated, additional interest accrued between – all the way up through January 3rd, which is today's date, of $26,366.22. Adding those two figures together, the amount that is due from [Robert] pursuant to your previous finding of contempt *** addressing those matters that you previously decided, he owes $88,498.71 as of today."

¶ 30 Robert's counsel questioned an aspect of the calculation, resulting in Phyllis's counsel conceding—after a lengthy back-and-forth[2]—that $5,591.93 should be subtracted from $88,498.71 to yield a final value of $82,907.71. Thereafter, Robert's counsel briefly stated his objections to the manner in which interest was calculated. The court acknowledged, and promptly dismissed, those objections. It then inquired about Robert's current financial situation and addressed purge-related matters. During this colloquy, the court asked Robert about his E*TRADE stock account. He indicated it was his retirement account.

¶ 31 K. January 2022 Order

¶ 32 On January 3, 2022, the court issued a written ruling, which provided, in pertinent part,

"1. That the current amount due from [Robert] to [Phyllis] for the arrearages previously established, with interest accrued, is found to be in the amount of $82,907.71. *** The court enters this ruling over [Robert's] objection on the manner in which interest was calculated.

2. [Robert] can purge himself from the previous finding of contempt and the court's previous Order sentencing him to an indeterminate [jail] sentence *** by payment

[2]The exchange is difficult to follow; the attorneys appear to reference a document not in the record.

8

of a lump sum in the amount of no less than $5,000 on or before March 1, 2022. [Robert] is to immediately apply for release of those funds from his ETRADE account. Further, [Robert] shall pay to [Phyllis] a sum of no less than $3,000 per month until such time as the judgment entered this date in the amount of $82,907.71 is paid in full, with statutory interest at the rate of 9% per annum. The judgment entered this date establishing the arrearages in the amount of $82,907.71 resolves all issues previously raised and adjudicated by the court in its prior Order finding [Robert] in contempt on 5/18/2016 and additional findings in its Order dated 7/20/2016.

* * *

5. [Phyllis] is granted leave to file her 508(b) Fee Petition for all fees and costs incurred in conjunction with the court's previous finding of contempt, including all fees and costs incurred in subsequent court proceedings with respect to the court's finding of contempt, related bankruptcy matters, and the determination of the current amount due. ***

6. Then [*sic*] court acknowledges [Robert's] outstanding claim for credit in the amount of his bond refund ($8,213.00) and his share of the one dividend check ($6,620.00) in January 2017 previously received by [Phyllis]."

This appeal followed.

## II. ANALYSIS

Robert argues the trial court erred in (1) calculating the updated arrearage amount, (2) setting the purge, and (3) granting Phyllis leave to file a section 508(b) fee petition. We address each issue in turn.

¶ 35                              A. Arrearage Judgment

¶ 36                                   1. *No Forfeiture*

¶ 37        Preliminarily, Phyllis maintains that Robert has forfeited any argument concerning the principal amount of the arrearage judgment because, she claims, he is raising it for the first time on appeal. See *Concord Air, Inc. v. Malarz*, 2015 IL App (2d) 140639, ¶ 24 ("Issues not raised in the trial court generally are forfeited and may not be raised for the first time on appeal."). We disagree. Robert raised this exact contention in the February 2019 hearing on Phyllis's petition to determine the nondischargeability of certain debts. During that hearing, Robert argued that Phyllis's petition was moot as it related to the $74,534.82 judgment:

> "[Robert's counsel]: *** Now so first all *** petitioner's claim No. 3 in the amount of $74,534.82 for the claim as asserted in Paragraph 15, A, B, C, D, G, H and I [of the petition to determine nondischargeability], everything except for E and P were paid in full.
>
> [Phyllis's counsel]: Objection, Judge. We're not here to determine payment or not. We're here to determine dischargeability, period, period.
>
> [Robert's counsel]: It does matter, Judge, because it's been satisfied.
>
> * * *
>
> THE COURT: The objection is sustained.
>
> [Robert's counsel]: There is no debt to determine non-dischargeable, Judge. It's been satisfied. I don't understand why he's pursuing something that's already been satisfied."

Although the trial court found Robert's argument irrelevant to the dischargeability question, we find it relevant here. And to the extent this argument was not renewed at the January 2022 hearing,

the forfeiture rule is a limitation on the parties, not on this court. *Malarz*, 2015 IL App (2d) 140639, ¶ 24.

¶ 38                                  2. *Trial Court's Calculation Error*

¶ 39        Robert argues that the trial court erred in calculating the arrearage amount due on January 3, 2022. The calculation of support arrears raises a factual question that we review under the manifest weight standard. *Samour, Inc. v. Board of Election Commissioners of City of Chicago*, 224 Ill. 2d 530, 542 (2007). "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Id.* at 544.

¶ 40        By its plain language, the January 2022 order—as it related to the $82,907.71 judgment—was limited to resolving issues adjudicated in the court's May 2016 and July 2016 orders. The January 2022 order provided, "The judgment entered this date establishing the arrearages in the amount of $82,907.71 resolves all issues previously raised and adjudicated by the court in its prior Order finding [Robert] in contempt on 5/18/2016 and additional findings in its Order dated 7/20/2016." Despite this language, however, the $82,907.71 judgment went beyond the scope of the May 2016 and July 2016 orders.

¶ 41        The trial court adopted Phyllis's faulty computation, one that improperly accounted for business interests liquidated during Robert's bankruptcy. During the January 2022 hearing, Phyllis's counsel explained the basis for his computation, "The original judgment that [the court] entered as a result of the previous finding in contempt back July 20th *** '16, was for 74,534.82. The claims from bankruptcy *add additional sums for the sale of business interest, one for 15,000 and one for 54,218, for a total due of 143,752.82.*" (Emphasis added.) Thus, rather than base his computation on the July 2016 arrears alone, Phyllis's counsel added sums that were not due in July

11

2016 (and could not have been due as Robert's business interests had yet to be liquidated). This was clearly at odds with the January 2022 order, which described the $82,907.71 judgment as "the current amount due from [Robert] to [Phyllis] for the arrearages *previously established*, with interest accrued." (Emphasis added.) At the time of January 2022 order, the only "arrearages previously established" were arrearages established in July 2016, in the amount of $74,534.82.

¶ 42 Phyllis's claims for $15,000 and $54,218, representing half of the value of the liquidated medical practice interests, arose only after Robert filed for bankruptcy in August 2016. They were not addressed by the court in its May 2016 or July 2016 orders. Accordingly, those claims, like any subsequent debt, would need to be raised in a separate pleading. The court's consideration in January 2022 of obligations not previously established in July 2016 was improper.

¶ 43 Phyllis's Claim No. 3, in the amount of $74,534.82, was fully satisfied as outlined in the bankruptcy trustee's final report. Phyllis does not contest this point. Indeed, the transcript of the January 2022 hearing reveals she acknowledged receiving $93,385.77 from the bankruptcy estate. Claim No. 3's satisfaction largely resolves Robert's primary contention on appeal. Slightly complicating our analysis, however, is the source of funds used to satisfy the claim in bankruptcy.

¶ 44 3. *Bankruptcy Disbursement*

¶ 45 Under section 541 of the Code, a bankruptcy petition's filing creates an estate comprised of all property in which the debtor holds a legal or equitable interest. See 11 U.S.C. § 541(a)(1) (2016). Crucially, however, "[a] debtor's interest in a portion of property does not subject the entire property to § 541." *Ryan v. Branko Prpa MD, LLC*, 55 F.4th 1108, 1117 (7th Cir. 2022). "Nor does a debtor's claim to property mean that the entire property is part of the bankruptcy estate." *Id.* Indeed, a bankruptcy estate can possess nothing more than what the debtor himself possessed outside bankruptcy. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663

12

(2019); see *id.* ("A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either." (Internal quotation marks omitted.)). Section 541 of the Code provides,

> "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest *** becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, *but not to the extent of any equitable interest in such property that the debtor does not hold.*" (Emphasis added.) 11 U.S.C. § 541(d) (2016).

¶ 46     Here, a portion of the business interests liquidated to satisfy Phyllis's Claim No. 3 belonged to Phyllis, not Robert. The MSA awarded Phyllis an immediately vested one-half equitable interest in Robert's shares of Tinley Woods and United Urology. The MSA did not stop there. It also appointed Robert as trustee of Phyllis's equitable interests, thereby ensuring that while Robert maintained legal ownership, he was bound to act in Phyllis's best interests concerning her share. See *Sauvage v. Gallaway*, 329 Ill. App. 38, 44 (1946) (a trustee must act with undivided loyalty to his trust and owes his beneficiary a duty of loyalty more intense than in any other fiduciary relationship). Moreover, the MSA prohibited Robert from transferring, encumbering, or otherwise hypothecating Phyllis's one-half interest without express authorization. See *Shakman v. Department of Revenue*, 2019 IL App (1st) 182197, ¶ 26 ("[T]he trustee's holding of legal title to the property and his actions with respect to that property are determined by the instrument which creates the trust." (Internal quotation marks omitted.)). Thus, only Robert's interest, not the interest he held in trust, was properly made part of the bankruptcy estate.

¶ 47     The bankruptcy estate's net receipts totaled $138,436, including (1) $30,000 from the liquidation of Robert's and Phyllis's equal interests in Tinley Woods and (2) $108,436 from the liquidation of Robert's and Phyllis's equal interests in United Urology. The bankruptcy estate

13

contained no other moneys. Accordingly, before the disbursement of any estate funds, Phyllis was entitled to $69,218, representing half of the estate's net receipts, as her sole and separate property.

¶ 48 Phyllis inexplicably represented to the bankruptcy court that she was a creditor on both liquidated interests. This was in error. While the $74,534.82 arrearage judgment created a creditor-debtor relationship between Phyllis and Robert, the $69,218 in liquidated business interests did not. See, *e.g.*, *In re Brown*, 168 B.R. 331, 335 (Bankr. N.D. Ill. 1994) ("Even if the debtor spouse has actual possession of the pension plan or payments from the pension plan, the nondebtor's interest in the pension plan is still that nondebtor spouse's separate property and does not become property of the estate."). In pursuing each of her liquidated interests in the bankruptcy court, Phyllis filed a proof of claim, "a written statement setting forth a *creditor's* claim." (Emphasis added.) Fed. R. Bankr.P. 3001(a). She later stipulated that those claims were general unsecured claims. The bankruptcy proceeding having ended, we can only hold Phyllis to her representations. Despite Robert's estate having only $69,218 of his liquidated assets to remit to creditors, we must accept the bankruptcy court's determination that Claim No. 3 was fully satisfied. *Cassidy v. Kentner*, 235 Ill. App. 3d 114, 115 (1992) (state court lacks power to review the correctness of federal bankruptcy court ruling). Therefore, in calculating the arrearages through January 3, 2022, the court must apply $74,534.82 toward the July 2016 arrearage judgment.

¶ 49 4. *Nondischargeability of Claims*

¶ 50 Robert argues that Phyllis's liquidated interest claims were discharged in bankruptcy because they were property-related debts. His argument addresses subsection 523(a)(5) of the Code but fails altogether to address Phyllis's contention that the liquidated interest claims were nondischargeable under subsection 523(a)(15) of the Code. 11 U.S.C. § 523(a)(15) (2016). Contrary to Robert's persistent argument, property settlement obligations to a former spouse need

14

not be in the nature of alimony, maintenance, or support in order to be nondischargeable in Chapter 7 liquidation cases.[3] See *In re Kowalski*, 617 B.R. 116, 122 (Bankr. N.D. Ill. 2020); *In re Golio*, 393 B.R. 56, 61-62 (Bankr. E.D.N.Y. 2008). Nonetheless, we have already established that Phyllis's business interest claims were not in the nature of debts and, therefore, the question of dischargeability does not apply to them. Where Phyllis's liquidated business interest claims have only been partially satisfied in bankruptcy, she may institute a proceeding to reclaim the remaining moneys. See *In re Brown*, 168 B.R. at 336 (dismissing complaint to determine dischargeability as unnecessary where plaintiff is actually seeking to reclaim her property).

¶ 51　　　　As for the July 2016 arrearage judgment, Robert does not dispute its nondischargeability as a domestic support obligation. 11 U.S.C. § 523(a)(5) (2016) (bankruptcy does not discharge debts for domestic support obligations). He argues, instead, that it was fully satisfied by the $74,534.82 bankruptcy disbursement. This argument overlooks the arrearage judgment's accrual of interest between July 2016 and April 2018. See *In re Burke*, 405 B.R. 626, 652 (Bankr. N.D. Ill. 2009), *aff'd sub nom. ColeMichael Investments, L.L.C. v. Burke*, 436 B.R. 53 (N.D. Ill. 2010) ("Courts have found both pre-petition and post-petition interest non-dischargeable under § 523 when the underlying debt is found to be non-dischargeable."); *Matter of Larson*, 862 F.2d 112, 119 (7th Cir. 1988) (where the underlying liability is nondischargeable, the prepetition interest is similarly nondischargeable). Thus, the bankruptcy disbursement alone[4] could not have completely satisfied the arrearage judgment. We now turn to the computation of interest accrued after entry of the July 2016 order.

---

[3]It is unclear why Robert insists on citing outdated case law before this court (*e.g.*, *In re LaFleur*, 11 B.R. 26 (1981)) when the trial court sanctioned his counsel for doing just that.

[4]Together with the prepetition partial payments, the bankruptcy disbursement may have been enough to fully satisfy the arrearage judgment. We leave that determination, however, to the trial court. *Infra* ¶ 54.

¶ 52                            *5. Calculating January 2022 Arrears*

¶ 53        The January 2022 arrears arose out of the July 2016 order, which established a $74,534.82

arrearage judgment. The July 2016 order, however, does not specify the debt's principal and

interest components. Phyllis's counsel informed the court,

> "Accordingly, Judge, *** my computation as provided in my letter would be
>
> correct. And as you will note, I gave you the computation on the interest, 616 per
>
> day, we recomputed the amount due as of today to be 74,534.82."

The record does not include the letter cited by Phyllis's counsel; however, counsel's words indicate

that $74,534.82 was a value "recomputed" to incorporate interest through the hearing date.[5]

¶ 54        Not knowing the debt's principal component, we are unable to calculate interest accrual

after July 2016 and are therefore unable calculate the amount due, or whether any debt remained,

in January 2022. And while we might be able to back-calculate the principal, the trial court is better

situated to make that determination. Accordingly, we vacate the $82,907.71 arrearage judgment

for the reasons stated (*supra* § A(2)) and remand for the trial court to determine the arrears due, if

any, on January 3, 2022.

¶ 55        It is not enough for the court, on remand, to merely acknowledge Robert's "outstanding

claim for credit" in the amount of his bond refund and dividend check share, as it did in the January

2022 order. Rather, any payment toward the July 2016 arrears must immediately be reflected in a

reduction of the remaining arrearage amount.

---

[5]In her proof of claim, Phyllis misrepresented to the bankruptcy court, whether knowingly or unknowingly, that the $74,534.82 arrearage amount did not include interest. See Fed. R. Bankr.P. 3001(c)(2)(A) (requiring that, if claim includes prepetition interest, itemized interest statement shall be filed with proof of claim).

¶ 56        Finally, we stress that interest is calculated based on the unpaid principal amount alone; in no event may interest accrue on unpaid interest. *Halloran v. Dickerson*, 287 Ill. App. 3d 857, 863 (1997) ("It is well-established in Illinois that *** accrual of interest [under section 10 of the Interest Act (815 ILCS 205/10 (West 1992)] is simple interest and not compound interest."); see also 750 ILCS 5/504(b-5) (West 2016) (unpaid maintenance obligations accrue simple interest); 750 ILCS 5/505(b) (West 2016) (unpaid support obligations accrue simple interest). Accordingly, the trial court should note, in computing interest, the following:

(1) $8213 (Robert's bond refund) was applied to the arrears pursuant to the July 2016 order. Interest accrual must be adjusted accordingly after the turnover date.

(2) $6620 (Robert's dividend check share) was applied to the arrears in January 2017. Interest accrual must be adjusted accordingly after the disbursement date.

(3) $74,534.82 (bankruptcy disbursement) was applied to the arrears on April 16, 2018. *Supra* ¶¶ 24, 48. Interest accrual must be adjusted accordingly after that date.

¶ 57                                B. Purge Provision

¶ 58        Robert argues the trial court improperly set his purge by ordering him to pay a lump sum of at least $5000 from his E*TRADE stock account, which was a retirement account. In response, Phyllis argues this issue is moot because Robert has already remitted $5000 to her during the pendency of this appeal. See *In re Marriage of Betts*, 155 Ill. App. 3d 85, 104 (1987). Robert does not dispute his satisfaction of the purge, and we find this issue moot. *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) ("As a general rule, courts in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.").

17

¶ 59

¶ 60        Lastly, Robert argues the trial court should not have granted Phyllis leave to file section 508(b) fees. According to Robert, he "won the proverbial race to the bankruptcy courthouse," and any section 508(b) fees were discharged in bankruptcy.[6] We disagree. "Attorney fees incurred in the enforcement of a support obligation, like the obligation itself, are considered as maintenance or support for purposes of nondischargeability under § 523(a)(5)." *In re Beattie*, 150 B.R. 699, 703 (Bankr. S.D. Ill. 1993) (citing *In re Zimberoff*, 91 B.R. 839, 841 (Bankr. N.D. Ill. 1988))); see also *Nuellen v. Lawson*, 123 Ill. App. 3d 202, 204-205 (1984) (fees incurred to enforce child support award are nondischargeable in bankruptcy). Phyllis's petitions for rule to show cause were directly linked to the enforcement of Robert's domestic support obligations. Consequently, any fees incurred in preparing and litigating those petitions were nondischargeable in bankruptcy.

¶ 61        Nevertheless, we emphasize that only reasonable attorney fees may be awarded. 750 ILCS 5/508(b) (West 2020). Here, Phyllis improperly attempted to leverage a preexisting contempt proceeding to recover business interests liquidated during Robert's bankruptcy action. The liquidated business interests were not addressed in the May 2016 order, let alone in the underlying petitions for rule to show cause. Accordingly, Phyllis's section 508(b) petition may not include fees incurred in efforts to recover the value of her equitable interests in Tinley Woods and United Urology.

---

[6]In his bankruptcy petition, Robert failed to designate Phyllis's requested fees as a "contingent," "unliquidated," or "disputed" debt—despite the bankruptcy form providing those options. Instead, Robert mischaracterized the fees as an *incurred* debt (with an inception date of "various"). By failing to accurately classify Phyllis's section 508(b) petition, Robert's bankruptcy filing inadvertently excluded any section 508(b) fees that had yet to be awarded. Thus, assuming dischargeability, only fees awarded pre-bankruptcy were eligible for discharge.

18

¶ 62                            III. CONCLUSION

¶ 63        The judgment of the circuit court of Will County is affirmed in part, vacated in part, and

the cause is remanded for proceedings consistent with this order.

¶ 64        Affirmed in part and vacated in part; cause remanded with directions.